# Caldwell *versus* Fulton.

The minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface.

They are a corporeal hereditament, and pass by apt words in a deed, though not susceptible of livery of seisin; which, here, is supplied by the delivery and registration of the deed.

A conveyance of a tract of land, with "the full right, title, and privilege of digging and taking away stone coal, to any extent" the grantee might think proper, from under an adjoining tract owned by the grantor, is a conveyance of the entire ownership of the coal in place, beneath the adjoining tract.

The nature and quantity of the interest conveyed by a deed, is always to be ascertained from the instrument itself; and is not open to explanation by parol evidence.

An incorporeal right is indivisible, and if the grantee divide it by his own act it is extinguished.

ERROR to the Common pleas of *Westmoreland county*.

This was an action on the case by W. S. Caldwell against Robert

[Caldwell *v.* Fulton.]

Fulton, for digging and taking 20,000 bushels of stone coal from under his lands.

On the 27th May 1831, James Caldwell, the ancestor of the plaintiff, was the owner of the *locus in quo*, and on that day he conveyed to one George Greer, 16 acres of the tract, lying on the Youghiogheny river; and " also, the full right, title, and privilege of digging and taking away stone coal, to any extent the said George Greer may think proper to do, or cause to be done, under any of the land now owned and occupied by the said James Caldwell; provided nevertheless, the entrance thereto, and the discharge therefrom, be on the foregoing described premises."

On the 23d March 1842, George Greer conveyed an undivided moiety of the said tract of land, and one-half of the coal, to Butler Case; who, on the 20th January 1844, conveyed his interest to William McCune.

The other undivided moiety, by sundry conveyances, became vested in Thompson Bell; and on the 7th June 1848, Bell and McCune made partition by deed.

The defendant, under a lease from McCune, entered and dug the coal in question; and to recover damages for the taking of it, this suit was brought by the plaintiff, who claimed by devise from his father, James Caldwell.

A former suit for the same cause was before this court in 1855, on which occasion the following opinion was delivered by

Woodward, J.—This was an action of trespass, for taking coals from the land of the plaintiff. He claimed the *locus in quo*, by devise from his father, James Caldwell. The defendants justified under George Greer, to whom James Caldwell made a deed, in his lifetime, for the coals taken, and as the judgment to be entered in this case must depend on the construction of that deed, it is important to obtain, at the threshold, a clear and comprehensive view of its terms.

The deed was dated on the 27th May 1831; acknowledges a consideration of one thousand eight hundred dollars, is to George Greer, his heirs and assigns, for all the therein " described pro-perty, situate on the east side of the Youghiogheny river," and then describes by metes and bounds, two parcels of land, one of which contains six acres and forty-seven perches, the other ten acres and fifty perches. The grant of coal then follows, in these terms :—" Also, the full right, title, and privilege of digging and taking away stone coal, to any extent the said George Greer may think proper to do, or cause to be done, under any of the land now owned and occupied by the said James Caldwell; provided, nevertheless, the entrance thereto, and the discharge therefrom, be on the foregoing described premises." · In the *habendum* the property conveyed is called two lots or parcels of land, and the

[Caldwell v. Fulton.]

" aforesaid right to the stone coal," and is so designated again in the covenant of warranty.   Such was the original grant.

On the 23d March 1842, Greer and wife conveyed an undivided half of the premises to Butler Case, and the other half to John B. McCune.   January 20th 1844, Butler Case conveyed to William McCune.   December 5th 1844, John B. McCune conveyed his moiety to Thompson Bell.   By deeds, bearing date the 7th June and the 30th August 1848, Bell and William McCune made partition between themselves of the sixteen acres, according to agreed lines, and of the coal lying back of said lots, under the Caldwell farm, in a manner corresponding with the partition of the lots.

In August 1852, William McCune leased to Fulton and the other-defendants his several part, both of the lots and the coal; and it was the entry upon the coal, under this lease, for which the suit was brought.   It does not appear, from the record, whether any opening had been made into the coal, on the part of the premises set off to McCune, but it is stated that the opening on Bell's portion of the ten acre piece has not been worked since Fulton commenced working the coal on McCune's part.

The court below seems to have been at a loss whether to denominate the grant of coal in Caldwell's deed to Greer a common in gross, or appurtenant, or a license, but were clear that it was not an absolute grant of all the coal under the plaintiff's land.

A license it cannot be.   The form of the conveyance excludes that.   License is defined to be a power or authority given to a man to do some lawful act, and is a personal liberty to the party to whom given, which cannot be transferred over, but it may be made to a man or his assigns: *Tomlin's Law Dic.*   Because a mere license to enjoy a privilege in land is not an estate therein, it may be granted without deed, and even without writing, notwithstanding the statute of frauds.   But here an estate or interest was evidently intended to be conveyed, and it must have been either a corporeal or an incorporeal hereditament.   Whether the one or the other, it was assignable by the very terms of the grant, but, if incorporeal, I agree it was not divisible.   Bell and McCune were capable of taking, as assignees of the original grantee, but they were bound to hold, enjoy, and convey the hereditaments as an entirety, and when, by mutual conveyances, they parted it into severalty, and extinguished thus, each his moiety, they could no longer hold by entirety, and, therefore, could not hold at all. Lord Mountjoy's Case, which has often been recognised as good authority, contains all the principles necessary for the decision of this case, if the thing granted be regarded as an incorporeal interest.   That case, as reported in *Godbolt*, was thus:—Lord Mountjoy, by deed, sold and conveyed the manor of Camford, to Brown, in fee, with a proviso in the indenture that contained Brown's

[Caldwell *v.* Fulton.]

covenant, " that Mountjoy, his heirs and assigns, may dig for ore within the land in Camford, which is a great waste, and also to dig for turf there, to make alum and copperas, without any contradiction of the said Brown, his heirs and assigns."

Three things were resolved :—

First. That Lord Mountjoy could not divide the said interest so as to grant to one to dig in one parcel of said waste, and to another to dig in another parcel thereof.

Second. That notwithstanding the proviso, Brown, his heirs and assigns, owners of the soil, might dig there also ; like to the case of common *sans nombre.*

Third. That Lord Mountjoy might assign his interest, but if there were several assignees they could not work severally, but must work together, with one stock, else there would be a surcharge to the tenant of the soil.

The reservation in that case was very indefinite, " to dig for ore and turf, in a great waste, to make alum and copperas." There could be no livery, no corporal tradition of the thing granted, and if the terms of Greer's deed import no more than is contained in Mountjoy's reservation, Bell and McCune could work with only one stock, and might not surcharge the owner of the surface by introducing an indefinite number of distinct operations.

But was this the grant of no more than an incorporeal hereditament ? Caldwell reserved no interest himself. He sold for a valuable consideration, all he had in the sixteen acres, and all the coal in his other land. I say all, because the grant is limited to no time, or quantity, or purpose, or person. The full right to take stone coal to any extent the grantee, his heirs or assigns, may think proper to do, or cause to be done, are not, perhaps, the best chosen words for describing the *corpus ;* but what less than the whole of the coal can they be construed to mean ? If not the whole, how much coal is granted ? Can a reservation to the grantor be implied, in the face of terms so large ? That were to reverse the maxim that deeds are to be taken most strongly against the grantor. The will of the grantee was the measure of the grant. Not only he, his heirs and assigns, were to take *ad libitum*, but might *cause to be taken*, without stint. The grantee might plant a miner on every available foot of the coal, under that deed. There was one only condition, that the entrance to the coal, and the discharge therefrom, should be on the sixteen acres, and because this was expressed, no other was intended. *Expressio unius exclusio alterius.* Subject to that condition alone, the grantee was invested with complete dominion over the coal. What room was left for the grantor ? Might he too mine coal ? Assuredly not, against the consent of his alienee, for he had sold all the coal that alienee might think proper to take, or cause to be taken.

[Caldwell v. Fulton.]

And if the grantor might not mine of right, then the grant was total; he might not take a part, because he had conveyed the whole. There are many untechnical words, which, receiving an interpretation according to substance, are held to vest effectual estates. Thus a grant of the profits, or income, or rent and issues, or acceptation and profit, or free use, or the right to dispose of, or to give or sell, or to dispose of at will or pleasure, or to do his will therewith, or to be at his discretion, or to be freely enjoyed, are sufficient to pass the title out of which such rights are to flow, or over which such powers are given, where no evidence of a contrary intention is furnished by the instrument itself: 1 *Salk.* 228; 5 *Mod.* 63, 98, 101; *Cro. Eliz.* 190; *Cro. Jac.* 104; *Plowd.* 541; *Viner Abr.* (Devise H.); 9 *Mass. R.* 372. It was in relation to such grants that GIBSON, C. J., said in Morris v. Phalen, 1 *Watts* 390, "it is an undoubted rule, that the bequest of a general power of disposal carries the absolute property, whenever a limited interest is not given. For such a power, being a principal attribute of ownership, necessarily implies the existence of it, whenever the implication is not rebutted by the bequest of a special interest inconsistent with it." These are principles in the construction of wills, but equally applicable to deeds, except in those instances where inflexible rules of law demand certain words of perpetuity, to create more than estates for life. For these reasons, drawn both from an analysis of the deed itself, and from the principles of interpretation, as applied to written instruments, we conclude that Caldwell sold and conveyed to Greer the absolute and exclusive right to all the coal under his land; and from this it must necessarily follow, it was a corporeal, and not an incorporeal interest. An exclusive right to all the coal, to be taken, without limitation, except as to the point of ingress and egress, is a sale of the coal itself; and there is nothing incorporeal about coal. It is included in the definition of land, and those hereditaments only are incorporeal which are not land. Rent is the best definition of an incorporeal hereditament; it issues out of the thing corporate, but is no part of it. The thing is as perfect after render of the rent, as before. So common of pasture is a right issuing from land, without diminution of the source; common of estovers, of turbary, and of coals, are not, strictly speaking, incorporeal, for they are not so much the produce of lands annually renewable, as they are part of the land itself. But these are always appendant or appurtenant to a particular tenement, and, as a classification, cannot comprehend coal mines which are worked for purposes of trade and profit. And to none of these distinctions in the law of common can this grant be referred, if we are right in holding it to be exclusive in the grantee and his assigns. It is their close, as much as if it were land. This point was ruled in Wilson v. Mackreth, 3 *Burr.* 1825. The action

[Caldwell *v.* Fulton.]

there was trespass for entering plaintiff's close, and digging and carrying away turf and peat. The objection was, that the remedy should have been case, as the plaintiff did not own the soil. But all the judges held the action would lie, because the plaintiff had an exclusive right to the turf and peat.

Can it be doubted that these defendants might maintain trespass and ejectment against intruders into their mines? It has been often ruled in England, that trespass and ejectment will lie in respect to open coal mines, for of these there can be possession; but mines not opened, when held by another than the owner of the soil, are sometimes said to be incorporeal, because they lie in grant, and are not susceptible of livery of seisin. With us, delivery and registration of the deed stand in lieu of livery, and there is no ground or reason for maintaining an embarrassing distinction in respect to this very important kind of property.

It is a common thing, in the mineral districts of Pennsylvania, for the surface to belong to one owner, and the coal which it covers to another. Both the surface and the coal are held by deeds, executed and delivered, and recorded in the same manner; and there is no more reason for considering the coal an incorporeal hereditament, because it has not been opened, than there is for considering the soil such, because it has not been ploughed. Still less reason is there for calling it an incorporeal hereditament, if the deed happen to describe the grant as a right to enter, dig, and carry away all the coal, instead of describing the coal without the customary circumlocution. In all these cases, where the right, rather than the thing, is described, nobody is at a loss to know what is intended to pass. It is the thing that is bought and sold. And where that is a coal bed, it is an abuse of language, and an unnecessary application of legal distinctions, to call it an incorporeal hereditament. Some late English cases indicate an inclination in their courts to treat these mine rights, as we think they should be treated, as corporeal hereditaments. In the case of Humphries *v.* Brogden, 1 *Law & Equity R.* 241, the action was on the case, by the surface owner against the mine owner in an adjoining lot, for removing the subjacent mineral strata, whereby the natural support of the plaintiff's lot was taken away, and it subsided, greatly to his injury; and in Jeffries *v.* Williams, *Id.* 433, the facts were similar. Throughout both cases, the mine right, severed from the ownership of the soil, was regarded as a separate close, and compared to the lower story of a building, which the owner is bound to keep in a suitable condition to support the upper stories, owned by others, as the owner of the upper story is bound to maintain the roof, for the protection of all below him.

It may be thought somewhat incongruous to apply the name of land to both the surface and the underlying mineral strata, where they have been severed in title; but it is more incongruous still to

[Caldwell *v.* Fulton.]

treat the surface as a corporeal hereditament, and the mine right, when granted in terms so large as to comprehend the whole mineral deposit, as incorporeal.

It would be more according to analogy to consider the surface an incorporeal interest, for it is the production of that which ordinarily makes it valuable. Whilst its natural fruits are reaped, the soil itself is not removed. Not so of stone coal. The *corpus* itself is taken, and that is a more real and substantial interest than the fruits of the surface. If the surface be a corporeal hereditament, much more must the mineral *substratum* be. And regarding them both as land, and applying to both the same legal remedies, we hold the owner of each to the maxim, *sic utere tuo ut alienum non lædas*, and to all the obligations of good neighbourhood; whilst, by maintaining a distinction between them, which has ceased to have foundation, we embarrass the respective owners in the exercise of their rights, and ourselves in the application of legal remedies.

We hold, in conclusion, that the parties to the deed of May 27th 1831, intended an absolute and exclusive grant of all the coal under the grantor's land; that though severed from the surface, it was still a conveyance of land, and not a mere license or common. The consequence is, that the grantees held it as other real estate is held, and might part it among themselves, as land is divided; and that the defendants, entering in pursuance of such partition, were not trespassers, and ought to have had the judgment.

The judgment is reversed, and judgment is entered for defendants for costs.

On the trial of the present suit, the plaintiff offered to prove by parol, the circumstances under which the original purchase was made, the motives which prompted it, together with the opinion of the parties, at the time, as to the extent of the interest conveyed. The original articles of agreement were also offered in evidence for the same purpose.

The court below rejected this evidence, to which the plaintiff's counsel excepted; and the learned judge having directed the jury to find for the defendant, and a verdict and judgment having been rendered accordingly, the plaintiff sued out this writ, and here assigned for error the rejection of the evidence offered on the trial, and the charge of the court below.

*Cowan*, for the plaintiff in error.—If there is anything well settled in the law, both by ancient and recent decisions of the courts, it is that " when there is right or privilege given by one man to another, to take and use some part or portion of that which the lands of the former produce, such as woods, waters, mines, &c.," such right or privilege is a right in common with the grantor or owner of the soil and not exclusive of him. It is

[Caldwell *v.* Fulton.]

equally well settled, that although it be said in the grant, that the grantee may take all the coal, &c., or as much as he pleases, yet still that does not exclude the grantor from also taking; simply because it is a grant not of the thing itself, but of a right to take it, and until it is actually seized or taken, the property is in the grantor: Lord Mountjoy's Case, *Godb.* 17; *Co. Litt.* 164 b; Grubb *v.* Bayard, 2 *Wall. Jr.* 91, 92; Chetham *v.* Williamson, 4 *East* 469; Doe *v.* Wood, 2 *B. & Ald.* 724.

The testimony offered and ruled out by the court below was not to contradict the deed, or to add to, alter, or diminish anything contained in it; but to throw light upon its dubious phraseology, and give us a certain clue to the intention of the parties; which intention is, that which is sought for in the construction of every writing, when it is not against the policy of the law to give it effect : Selden *v.* Williams, 9 *Watts* 9; Skilton *v.* Webster, *Brightly* 240.

This right or privilege was not divisible, and Greer's attempt to do so, extinguished it in the hands of his grantees : Lord Mountjoy's Case, *Godb.* 17; Leyman *v.* Abeel, 16 *Johns.* 30; Grubb *v.* Bayard, 2 *Wall. Jr.* 81; Van Rensselaer *v.* Radcliffe, 10 *Wend.* 637; 11 *Vin. Abr.* 567, tit. Extinguishment; Bruerton's Case, 4 *Co.* 1.

*Foster*, for the defendant in error, cited and relied upon the decision of this court, in the former action between the same parties in 1855.

And on the subject of the admission of the parol evidence offered on the trial, referred to 6 *Barr* 390; 4 *Id.* 119; 9 *Id.* 335; 5 *Id.* 403; 1 *W. & S.* 195; 1 *Jones* 238; 3 *Harris* 66; 12 *Id.* 392.

The opinion of the court was delivered by

STRONG, J.—This record presents the same question which was here at October Term 1855, in an action between the same parties. The writ of error is designed to bring under review the adjudication which was then made. At that time, this court was of opinion that the deed from Caldwell to Greer was an absolute and exclusive conveyance of all the coal under the grantor's land, and not a mere license, or incorporeal hereditament. Such a construction of the deed is supposed to have been erroneous, and we have heard an earnest and able argument in support of the opposite interpretation.

The question is all-important to the rights of the parties; for, if the interest of the grantee is incorporeal, and not exclusive, it is necessarily indivisible; and Greer, having divided it by his own act, by alienation of part, extinguished it: 4 *Co.* 1; Van Rensselaer *v.* Radcliffe, 10 *Wend.* 639. On the other hand, if the deed was a grant of all the coal, it might be conveyed without extinction of the right, either in entirety or in parts.

[Caldwell v. Fulton.]

The deed conveys in fee two tracts of land, and in its granting part, after describing the tracts by metes and bounds, adds, " also the full right, title, and privilege of digging and taking away stone coal, to any extent the said George Greer may think proper to do, or cause to be done, under any of the land now owned and occupied by the said James Caldwell; provided, nevertheless, the entrance thereto, and the discharge therefrom, be on the foregoing described premises." Then follow the habendum and covenants of warranty, in one of which this subject of the grant is called " the aforesaid right to the stone coal," and in the other " the right of stone coal hereby given." The consideration mentioned is single for the entire subject conveyed by the deed. It is to be observed in the description of the thing granted, that there are no limits fixed upon the extent to which coal might be taken from the land then owned and occupied by the grantor. The grantee's right was coextensive with his will; not necessarily to be exercised by himself, but one which might be enjoyed by others whom he should authorize. No form of words other than those employed could have given him larger dominion.

Coal and minerals in place are land. It is no longer to be doubted that they are subject to conveyance as such. Nothing is more common in Pennsylvania than that the surface right should be in one man, and the mineral right in another. It is not denied, in such a case, that both are landowners, both holders of a corporeal hereditament. Our English ancestors, indeed, found difficulty in conceiving of a corporeal interest in an unopened mine—separate from the ownership of the surface—because livery of seisin was in their minds inseparable from a conveyance of land, and livery could not be made of an unopened mine. The consequence was, that they were disposed to regard such rights as incorporeal, though they are not rights issuing out of land, but the substance itself. In this state, however, livery of seisin is supplied by the deed and its registration, and there is nothing incongruous in considering a grant of the *substratum* a grant of land, as much as is a conveyance of the surface itself. It is often by far the most valuable, and sometimes embraces all for which the land is worth owning. Even in England, so long ago as the reign of James I., it was held that ejectment would lie for a coal mine: Comyn v. Wheatly, *Cro. Jac.* 150. It was objected that it was beneath the soil, and that an *habere facias* could not be thereof; but the objection was disallowed. Yet, ejectment cannot be sustained for an incorporeal hereditament, except perhaps in the case of a common appendant or appurtenant. With us, unfettered as we are by the necessity of livery of seisin, and abounding in mineral districts, I am not aware that it has been seriously doubted that the ownership of a coal bed or seam is a corporeal interest in land. Cases not unfrequently occur, in which the owner of lands sells merely the surface right, retaining

[Caldwell *v.* Fulton.]

the minerals which lie in place below the surface. Now, as his whole interest was corporeal before the sale, and as by his deed only the surface passed, that which remains ungranted must be corporeal. This proposition needs no further argument, and it has not been questioned in the discussion before us. In Turner *v.* Reynolds, 11 *Harris* 199, a plaintiff in ejectment was allowed to recover a coal mine which he had described in his writ as land, and this, though his title was under a conveyance to him, not of the tract of land, but of the coal.

If then the ownership of the coal or other minerals in a tract of land may be vested in one person, while the right to the surface belongs to another, the next inquiry is, by what words it may be granted. There are two modes in which the subject-matter of a deed may be described, both equally potential. The one is by a description of the thing itself, as of land by metes and bounds, or by a known name, and the other is by a designation of its usufruct, or of the dominion over it. Thus a grant of the rents, issues, and profits of a tract of land is uniformly held to be a grant of the land itself: *Co. Litt.* 4 b. Judgments abound to this effect in regard to devises, and though in wills and deeds the rules of construction differ relative to words limiting the estate granted, yet they are the same of words describing the subject-matter of the grant. There are also cases of the same character to be found in regard to deeds. Thus it has been held that by the grant of a boilery of salt the land passes, for that is the whole profit, *Co. Litt.* 4 b ; or a mine of lead, *Id.* 6 a. So by the grant of all growing trees, *Cro. Eliz.* 522. See also 4 *Mass.* 266; Fish *v.* Sawyer, 11 *Conn.* 545. The reason is that the grant of a thing can be no more than the grant of the full and unlimited use of it. So too the general power of disposal without liability to account is equivalent to ownership itself, it being the highest attribute of ownership, and a gift of the one necessarily carries with it the other. This is the doctrine of Morris *v.* Phalen, 1 *Watts* 389.

Applying these principles to the case in hand, why was not the deed of Caldwell to Greer a conveyance of the coal in the land owned and occupied by the grantor? Because, says the plaintiff in error, it is not a grant of the thing itself, but of a right *to take it*, and until it is seized or taken the property in the thing remains in the grantor. But if the conveyance of the whole use of a thing, and of the absolute dominion over it, is a grant of the thing itself, only differing in the mode of describing the subject, it is not easy to see what more Caldwell could have sold than he did. If in another form of words he had described the coal as the subject of the grant, Greer would have possessed no greater beneficial rights than were given to him by the form adopted. The ownership of the coal in the ground is but a "full

[Caldwell v. Fulton.]

right, title, and privilege" to dig and carry it away, nothing more, nothing less. The words employed in the deed-express absolute dominion, and complete enjoyment. These constitute property, and all that is understood in proprietorship.

Again, says the plaintiff in error, this is but a grant of a right to take and carry away part of the profits, and that while a grant of a right to take all the rents, issues, and profits of a tract of land is equivalent to a conveyance of the land itself, because it embraces their whole usufruct, a grant of a right to take part, such as "iron ore, coals," or "minerals," is not. It is said that in such a case the grantee can only take in common with the grantor.

The argument is based upon a misconception. The subject alleged to have been granted here is not the tract of land, but the coal in it, which, as we have seen, is capable of a separate conveyance, and which may be vested in one person, while the ownership of the tract of land, as such, may be another's. The alleged subject of the grant then being the coal in the land, the *substratum*, the argument is inapplicable. The whole usufruct of that, as well as the entire dominion over it, was granted. The deed is not a conveyance of part of the usufruct, nor of the usufruct of part of the coal, but of the entire enjoyment. As already said, there was no limit to the grantee's right but his own will. He could take out coal to any extent. He could cause it to be taken out to any extent, and at all times under any of the land. He was accountable to no one. His entrance to it and his exit from it were indeed required to be on his own land; but the right to take the coal itself was absolutely unlimited. It would seem, therefore, that, according to well-established rules of construction, the deed of Caldwell to Greer was a conveyance of the coal itself, and not of a mere easement, or incorporeal hereditament.

It is contended, however, that such a construction is in conflict with the authorities, and we are referred to Lord Mountjoy's case as the leading and principal one. That was decided in the reign of Elizabeth, and is reported by *Godbolt*, Case 24, by *Leonard*, 4 *Leon.* 147, by *Coke, Co. Litt.* 104 b, and by *Moore* 174. It is, however, more fully reported in some respects, by ANDERSON, C. J., who was one of the justices who decided it. In his reports, page 307, we have the words of the reservation given at length. They are, " Provided always, and it is covenanted, granted, concluded, and agreed between the said parties to this indenture; and the said John Brown and Charles, and their heirs, covenant and grant to and with the said Lord Mountjoy, his heirs and assigns, by these presents, in form following, that is to say. That it shall be lawful for the said Lord Mountjoy, his heirs and assigns, at all times hereafter to have, take, and dig, in and upon the heath ground of the premises, from time to time, sufficient ores,

[Caldwell *v.* Fulton.]

heath, turves, and other necessaries for the making of alum and copperas." This was very properly held to have been a grant of an incorporeal hereditament. Unlike the case we have under consideration, it was not a grant of unlimited dominion over the ores and turf. It was not a grant of a right to dig, take, and carry away without stint, but only sufficient for a single specified purpose, viz.: the manufacture of alum and copperas. It was very aptly likened to a grant of common *sans nombre*, but was not an exclusive right. Surely there is very little resemblance between that case and the present. It is not at all in conflict with the construction we place upon Caldwell's deed to Greer.

Then follows the case of Chetham *v.* Williamson, 4 *East* 469, where the subject was not described in the granting part of the deed, nor in connection with the other property conveyed. The grantee after the *habendum* covenanted that it should be lawful for Hyde, one of the grantors, and his heirs, "at all times to enter into all or any part of the premises to search for and dig for coal or stone, or any other mine or mineral whatsoever, and the same to take, have, and carry away to his own use; provided and upon condition that it should and might be lawful for the grantee, his heirs, &c., to deduct from the rent reserved by the grantor out of the land, all or so much as should be reasonable, for any hurt, damage, or prejudice, that should be done to the premises, by reason of digging for, or carrying away any of the mine or mines aforesaid." The question was whether the alienee of Hyde, one of the grantors, and who had conveyed only an equity of redemption, could maintain trover against the covenantor for coals taken out of the land by him. It was held that he could not. LAWRENCE, J., placed the judgment upon the ground that the covenant could not operate as an exception or reservation in favour of Hyde, who had no legal estate in him at the time, but only the equity of redemption. He said that Hyde "being a stranger to the estate, he could not except or reserve that which he had not before. The covenant therefore could only operate as a grant, but a grant will not pass the land itself without livery." Lord Ellenborough confined his attention to the question whether the grant was exclusive. The differences between the case and the present one are sufficiently obvious. It is one very material distinction, that in Chetham *v.* Williamson, the right to take coal or minerals was not a thing for which the consideration mentioned in the deed was given. They were to be paid for when taken. In a deed of bargain and sale, it is the payment of the consideration which transfers the use, and with it the legal title. The case is also illustrative of the fetters which the doctrine of livery of seisin has imposed upon the construction of deeds.

We are next referred to Doe *v.* Wood, 2 *Barn. & Ald.* 719, where the grant was called a license, and where the privilege was

to dig, work, mine, and search for tin, &c., and dispose of what might be found during a term of twenty-one years. The court held it to be a license on the ground, among others, that it was a right to dig, search for, &c., "*the minerals that should within that term there be found,*" and not a grant of the entire subject. The indenture also contained covenants of the grantee to render a share of the ore he might find, and to allow the grantor himself to drive adits. The case is no authority in support of the argument of the plaintiff in error.

The only other case to which we are referred is Grubb v. Bayard, 2 *Wallace, Jr.* 81. There the grant was to dig, take, and carry away all iron ore to be found within the bounds of a tract of land of the grantor, provided the grantee should pay unto the grantor, his heirs and assigns, the sum of sixpence for every ton taken from the premises. This was held to be an incorporeal hereditament. It will be observed, that there was no present consideration passed, nor was there a covenant of the grantee to search for or take any ore. He might never have taken any. In that event, if the deed had been held a conveyance of the iron ore, there would have been a sale without a consideration. Nor was it a grant of the whole, but, said Mr. Justice GRIER, of the iron ore that should be found within the term, and on that account was but a license. He also remarked that "if it had been a grant of an absolute property in all the iron ore in the tract, the deed would have been insufficient to convey title without livery of seisin." This observation goes beyond the English cases, and is not necessary to the judgment rendered. In Grubb v. Bayard, Judge KANE delivered a concurring opinion. In it, he refers to the absence of a covenant by the grantee to work the mines, and thus make the rent reserved of value, as a circumstance of much importance in determining the intentions of the parties. That it is so, is obvious, for without it the contract might have proved entirely fruitless to the vendor, while in the present case, Caldwell has received all that he ever can receive. The right, whatever it is, is one for which all the consideration has been paid.

These are all the cases adduced to sustain the doctrine that a conveyance of a right to dig, take, and carry away the coal or minerals in a tract of land, though the grant be unlimited in quantity, time, or purpose for which the minerals may be taken, conveys no interest in the coal or minerals until they are taken, passes only an incorporeal hereditament. None of them were decided upon the ground of any supposed distinction between a right to take all the coal and carry it away, and a right to the coal itself. They are all cases in which there was no unrestricted power of taking and disposition conferred upon the grantee. The coal or minerals was to be taken either for a limited purpose, or in restricted quantities, and generally was not to be paid for until

[Caldwell *v.* Fulton.]

taken.   And in most of them it is easy to see that the supposed necessity of livery of seisin, in order to pass a corporeal interest in land, was a controlling consideration in the minds of the judges. Even in Grubb *v.* Bayard, it seems not to have been without influence.   The impossibility of making livery is, however, in Pennsylvania, no reason for refusing to give a construction to a deed accordant with the intention of the parties.   When the intent is to give the entire usufruct and power of disposal, the legal title must be held to pass.   Even in England, livery of seisin is no longer indispensable to the grant of a corporeal hereditament. Unopened mines may be conveyed, and the grantee takes more than a right issuing out of land, or exercisable therein.   He takes the mines themselves.   In Stoughton *v.* Leigh, 4 *Taunt.* 402, a widow was held entitled to dower of mines, not only in lands in which her husband had been seised in his lifetime and during coverture, but also in those which were in the lands of other persons, the minerals or *substratum* of which had been conveyed to him.   It was also ruled, that in assigning her dower, the sheriff should set off to her not one-third of the profits, but one-third of the mines themselves, and that the partition might be made either by metes and bounds, or by directing separate alternate periods of enjoyment.

It is not strange, therefore, that it had been held in this state before the controversy between these parties was first here, that an unrestricted right to take and carry away all the coal in a tract of land is a corporeal right and exclusive.   In Benson *v.* The Miners' Bank, 8 *Harris* 370, we have this case : Reese was seised of two undivided third parts of a tract of land, and of one-fifth of all the fossil coal under it.   He made a deed for the tract to Kepner, containing the clause " excepting and for ever reserving the liberties and privileges for the heirs and legal representatives of Samuel Potts, deceased, (of whom he was one), to dig, take, and carry away all the stone coal that is or may hereafter be found on the above described tract of land."   The judgment of this court was, that the deed conveyed no part of the stone coal to the grantee of the land.   Of course it remained reserved or ungranted as a corporeal hereditament.

Thus, after a careful review of the question, we are constrained to hold that, by the deed from Caldwell to Greer, the title to the coal in the lands then owned and occupied by the grantor was conveyed, and not a mere license, or incorporeal right.   Such was the opinion of this court in 1855, when the same deed was here for construction, and the very able argument of the counsel for the plaintiff in error, has failed to convince us that the court was then mistaken.

There are some exceptions to the rejection of evidence offered in aid of the construction of the deed.   The offers were to show by

[Caldwell v. Fulton.]

the testimony of Greer, taken after he had parted with the interest granted, the circumstances under which the original purchase was made, and the motives which prompted to it, together with his opinion and that of his grantee's as to the extent of the interest which passed by the deed. The original articles of agreement were offered for the same purpose. This evidence was not submitted to show fraud or mistake in the deed, nor had it any tendency to show either. Its purpose was to control the meaning of the words which the parties used. It is, however, the settled rule, that a deed must be construed, "*ex visceribus suis.*" When the intent is clearly expressed, no evidence of extraneous facts or circumstances can be received to alter it: Means v. Presbyterian Church, 3 *W. & S.* 303; Brown v. Nickle, 6 *Barr* 390; Lyon v. Miller, 12 *Harris* 392. It may be admitted, that when the deed leaves the subject-matter of the grant in doubt, parol evidence may be resorted to, in order to ascertain it, but the nature and quantity of the interest conveyed is always to be ascertained from the instrument itself. Here the inquiry is, what dominion or ownership, if any, in the coal, Caldwell granted, and that must be determined exclusively from the words which he employed. The evidence was therefore rightly rejected.

The judgment is affirmed.