## Commonwealth v. Goodyear

Before Shughart, P. J., and Jacobs, J.

*Clinton R. Weidner,* for Commonwealth.

*Thomas I. Myers,* for defendant.

SHUGHART, P. J., November 23, 1959.—The above defendant appealed from his conviction on two charges of alleged violations of The Fish Law of May 2, 1925, P. L. 448. The facts are not in dispute and are stated in a stipulation entered following a trial de novo in this court. At the close of the testimony counsel for defendant moved for the dismissal of both charges. Since legal questions were involved, the matter was placed on the argument list. The matter has been argued and is now before us for decision.

From the statement of stipulated facts it appears that on June 11, 1959, defendant was the holder of resident fishing license 228650 of the Commonweatlh of Pennsylvania for the year 1959. On that date this license was found in the possession of one Belin who was found engaged in the act of fishing by a special fish warden of the Commonwealth. At the time the license did not bear the signature of defendant William Goodyear. Thereafter, charges were brought against defendant: (1) Charging him with the failure to sign the license; and (2) with the offense of loaning his fishing license to another.

Concerning the first of these alleged violations section 222 of The Fish Law of May 2, 1925, P. L. 448, as amended, 30 PS §222, provides in part as follows:

"All licenses shall be issued on forms prepared and supplied by the Department of Revenue. . . . The license shall show the name, age, occupation, and resi-

dence of the licensee and the date of its issue. *It shall also contain the signature of the licensee written in ink,* and shall authorize the person named therein to fish . . . under the restrictions and requirements of existing laws during the year the date of which is inscribed thereon. . . ." (Italics supplied.)

This section provides no penalty for the omission of any of the matters to be shown on the license.

Section 226 of The Fish Law, 30 PS §226, provides that: *"No person shall angle or fish in any of the waters"* of the Commonwealth unless the license be at such time continually kept about the person of the licensee and "unless the license button be . . . displayed on the outer garment" so that the figures are plainly visible.

Section 227, 30 PS §227, provides that: "No person shall alter, loan or transfer any license . . . nor give any false or misleading information to the issuing agents or to the Department of Revenue . . . or [its] agents in the application therefor."

Section 228, 30 PS §228, provides that: "Any person violating any provisions of this article shall on conviction, . . . be sentenced for each offense to pay a fine of twenty-five dollars."

Counsel for defendant contends that the charge of failing to sign the license must be dismissed because the statute does not make the failure to sign the license a penal offense. We are constrained to agree with this contention.

"The legislature, in the exercise of its power to declare what shall constitute a crime or punishable offense, must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid. If the meaning of a criminal statute cannot be judicially ascertained or if, in defining a criminal offense, it omits *certain*

*necessary and essential provisions which go to impress the acts committed* as being wrongful and criminal, the courts are not at liberty to supply the deficiency or undertake to make the statute definite and certain. If a statute uses words of no determinative meaning and the language is so general and indefinite as to embrace not only acts properly and legally punishable, but others not punishable, it will be declared void for uncertainty. It is axiomatic that statutes creating and defining crimes cannot be extended by intendment. *Purely statutory offenses cannot be established by implication"*: 14 Am. Jur. §19, p. 773. (Italics supplied.)

It is not necessary in this case to pass on the validity of the statute in question, it is rather a matter of interpretation of its provisions. The late Dean Walter H. Hitchler, in his Law of Crimes said, at page 33: "It is sometimes difficult to determine whether a statute makes *criminal* an act which it clearly describes or defines. The 'intention' of the legislature as disclosed by the phraseology and purpose of the whole act is said to be the determining circumstance."

A casual reading of the provisions of the statute recited above shows a wide variance between the phraseology used in providing for the things to be shown on the license and those providing for carrying the license, displaying the tag or loaning the license. In the latter instances the language says "no person shall" which is clearly and unmistakingly prohibitive. In the former this language is lacking. Further, it is not clear as to who bears the responsibility for seeing that the required information is on the license. Is it not the duty of the issuing agent to see that the license show the name, age, occupation and residence? What agent could issue a valid license without those things? If that be so, then is it not his duty as well as the licensee under the wording to see that the licensee signs in

ink? In this act when the legislature intended to make an act or omission unlawful, they said so emphatically and clearly. We do not feel called upon to create a crime by implication where the legislature has not clearly made it so.

We are aided in reaching this conclusion by the actions of the legislature in two other legislative enactments. In providing for the operator's signature on a driver's license the legislature provided as follows: "Every person licensed as an operator or learner shall write his usual signature . . . in the space provided for that purpose . . . immediately upon receipt of such card." Following this provision and that providing for carrying the card is set out the penalty for the violation thereof: Section 612 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §172.

The Game Law of June 3, 1937, P. L. 1225, sec. 321, §1311.321 et seq., provides that: "Any person who shall fail to sign his license certificate" as required by section 308 of the act "shall be sentenced to pay a fine of one dollar and costs of prosecution."

In addition to the difference in the phraseology of the two acts above from The Fish Law we have another guide to the intention of the legislature. In The Vehicle Code adopted in 1929 the penalty for failure to sign was made $5, in The Game Law adopted in 1937 the penalty was made $1. In light of these provisions it is obvious that in 1925 when The Fish Law was passed, the legislature never intended that the failure to sign a similar license to fish should result in a fine of $25, which is the only penalty provided in section 228 of the act, supra.

We are further fortified in this conclusion by vast difference in seriousness between the failure to sign the license, on one hand, that might result from mere neglect, and an intentional act such as loaning or altering a license, yet the same penalty would be applied

if we reached the conclusion urged by the Commonwealth. Such an absurd result could not have been intended by the legislature: Statutory Constitution Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552.

For the reasons given we conclude that the legislature has failed to make the failure to sign the license a penal offense and defendant's motion to dismiss this charge is sustained.

As stated above, the purported license which defendant loaned to Belin did not contain the signature of defendant. Counsel for defendant contends that without the signature the paper was not a "license" as defined by the act and therefore defendant cannot be guilty of lending the same.

The word license has two separate and distinct meanings. In the legal sense, a license is a special privilege, permission or authority conferring upon a person the right to do something which otherwise he would not have the right to do: Caldwell v. Fulton, 31 Pa. 475, 477; 33 Am. Jur. §2, p. 325. On the other hand, the word license is frequently used to describe the paper or other indicia which is the evidence of the permission or authority to carry on the activity indicated: People ex rel. Roginski v. Thompson, 225 Ill. App. 567; 1 Webster's New International Dictionary (Second Edition), Unabridged, p. 1425.

In the legal sense, a license being a personal privilege, or liberty, cannot as a general rule be communicated or assigned to another, unless the statutory enactment providing for the license so prescribes, and then the transfer must be made in the manner set forth by the legislative enactment: 33 Am. Jur. §6, p. 330; Caldwell v. Fulton, supra. The instant statute does not grant permission to transfer the privilege as has been provided in other instances, for example, in the Liquor Code. See article IV, sec. 468, of The Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-468.

We conclude therefore that the word license as used in section 227 of the act which prohibits the alteration, loan or transfer thereof refers not to the privilege of fishing itself, but to the paper which is the *evidence* of the permission to exercise the privilege. When the paper is on the proper form employed for the purpose, it constitutes evidence of the privilege even though one or more of the things specified by the act for inclusion thereon are missing.

As already decided herein, defendant is subject to no penalty for the failure to sign the indicia of the fishing privilege. That provision is directory only.

The paper without the signature therefore constituted sufficient evidence of the fishing privilege to subject the penalty of loaning it to another.

Defendant is not relieved of this penalty because of the provision on the back of the paper stating that the "license is void unless signed in ink" by the licensee. The requirements for the exercise of the privilege have been prescribed by the legislature, which has not provided for the voiding of the license for failure to sign.

Even if we concluded that the failure of the licensee to sign prohibited him from the exercise of the fishing privilege, it does not prevent the paper itself from constituting sufficient evidence of the privilege to subject a person to a penalty for loaning it to another in violation of the act.

To accept both contentions urged by defendant would lead to an absurd result. The licensee could safely fish without affixing his signature, because his failure to sign does not subject him to a penalty. Therefore, when apprehended with the unsigned license, he could correct the error by affixing his signature with impunity. On the other hand, he could freely pass the same on to another because the unsigned paper does not constitute a license and he could not be prosecuted under section 227 of the act for loaning the license.

The suggestion of counsel for defendant that one fishing with an unsigned license could be prosecuted for fishing without a license is equally untenable. Even unsigned the paper constitutes sufficient evidence of the permission to exercise the privilege of fishing to prevent such a prosecution. Section 222 of The Fishing Law, 30 PS §222, supra, states that "the license shall become void upon the thirty-first day of December next following the date of issue." Had the legislature desired or intended, they could have provided that the license shall become void for the failure of the licensee to sign the same, or for any similar reason. This they did not do and we cannot rewrite the statute by implication: Commonwealth ex rel. Maurer v. Witkin, 344 Pa. 191.

We are satisfied that the legislature fully intended to make it unlawful for the holder of a license to pass to another the paper which constituted evidence of the licensee's permission to engage in the act of fishing. Further, we are fully satisfied that such a paper in the form prescribed by the Department of Revenue and complete except for the signature of the licensee constituted sufficient evidence of that privilege to warrant a conviction under the section prohibiting the loan of the same.

And now, November 23, 1959, at 8:30 a.m., for the reasons given in the foregoing opinion, we find defendant, William Goodyear, not guilty of the charge of failing to sign his fishing license. Costs to be paid by the County of Cumberland. We find defendant, William Goodyear, guilty of the charge of loaning his license to another and he is directed to appear before the court on Tuesday, December 1, 1959, at 10 a.m., for sentence, unless prior thereto he shall have paid the Probation Officer of Cumberland County the costs on said charge and a fine of $25.