## Caldwell *versus* Copeland.

*Mineral Rights, held as Land against Landowner.*

1. Mines in the land of another, whether opened or unopened, may be held as land under a proper deed therefor duly executed, acknowledged, and recorded.

2. Possession of the surface for more than twenty-one years does not carry with it the possession of the coal below it, where the title to the mineral right had been severed from that of the surface, by deed.

3. Title to mines, distinct from the title to the surface, may be shown by documentary evidence, or in the absence of such evidence, or in opposition to it, by proof of possession and acts of ownership, under the Statute of Limitations.

4. When the owner of the surface seeks to establish title to a mine, by adverse possession under the statute, in opposition to his deed, he must prove possession of the mine as such, independently of his possession of the surface, or there can be no question of *adverse* holding to submit to the jury.

5. An entry, to exercise the privilege of mining coal, granted by deed, must be made or authorized by some person having rights under it, in order to toll the running of the Statute of Limitations in favour of the grantor.

ERROR to the Common Pleas of *Westmoreland county.*

This was an action of trespass *quare clausum fregit*, brought by William S. Caldwell against Thomas Copeland and John Copeland, for an alleged breaking and entering on the lands of plaintiff in Sewickley township, containing about one hundred and fifty acres, and carrying away ten thousand bushels of bituminous coal. To a declaration in the usual form, the defendants pleaded "not guilty," and on this issue, the parties went to trial. The case was this:—

James Caldwell, prior to the 27th day of May 1831, was the owner of the tract of land from which the alleged trespass in taking the coal was committed. On that day he conveyed to George Greer two pieces of land, one containing six acres and forty-seven perches, and the other, ten acres and fifty perches, being part of the tract he then owned and lived on, also the coal privilege in the following words: "Also the full right, title, and privilege of digging and taking away stone coal to any extent he, the said George Greer, may think proper to do or cause to be done, under any of the other land now owned and occupied by the said Caldwell, provided, nevertheless, the entrance thereto, and the discharge therefrom, be on the said described premises."

By sundry conveyances, the entire right to the land and the coal became vested in William McClure and Thompson Bell, who, on the 7th of May 1848, made partition of the premises, by means of which the tract on which the alleged trespass was committed, became the property of McClure, who, on the 16th of March 1853, leased to the defendants, by whom the entry

[Caldwell *v.* Copeland.]

complained of was made, and the coal taken away. The plaintiff claimed the *locus in quo*, by devise from his father.

The court below charged the jury, that, as the Supreme Court, in the case of Caldwell *v.* Fulton, 7 Casey 475, had construed the deed from James Caldwell to George Greer to be a conveyance of the entire property in the coal, they were bound so to regard it, and the point to be considered, then, was whether Greer, and those claiming under him, had lost this right by the Statute of Limitations; instructing them, that to bar his right, there must have been an actual, adverse, exclusive, and undisturbed possession for twenty-one years, which terms were explained by the court, and their application to the case commented on.

Under this charge there was a verdict in favour of the plaintiff, for $176.25, and judgment having been entered thereon, the defendants sued out this writ, and assigned for error the following matters, to wit:

1. The court erred in charging the jury as follows: " Being thus the owner, has George Greer, and those claiming under him, lost it by the Statute of Limitations ? To bar the right of the owner by the statute, there must be an actual, adverse, exclusive, and undisturbed possession for twenty-one years. It is said old Mr. Caldwell and the plaintiff under him have had such possession. Was it actual? The coal was taken from the land, the surface of which is admitted to have been in the actual possession of the plaintiff, and was so all the time. This actual possession of the surface carries with it the actual possession downward, perpendicularly, through all the various strata. The actual possession, therefore, was in the plaintiff."

2. The court erred in charging the jury as follows: " Was it adverse ? this is a question for the jury. After the deed of the 27th May 1831, did old Mr. Caldwell claim the coal now claimed, and did he admit the right of Greer to it ? did he claim it as his own property, in his own right ? On this subject the jury will take the deed, and consider the fact that he had conveyed himself to Greer, and also his acts and declarations recognising the right of Greer, and also the evidence that he claimed it himself. All the evidence on the subject, of the manner in which he and the plaintiff held, will be considered. If the jury believe they held and claimed it as in their possession, it being their property, and held it so for twenty-one years, then it would be an adverse possession; but if the jury believe that he only claimed to hold possession in subservience to the terms of the deed, then the possession was not adverse."

3. In charging the jury as follows: " It must be exclusive. If the possession of Caldwell was in common with that of Greer, both occupying the whole or portions and both claiming title, in

[Caldwell *v.* Copeland.]

that event the possession would not be exclusive, and the statute would not avail the plaintiff."

4. In charging the jury as follows: "It must also be continued. If the actual possession of the plaintiff—supposing the jury should find it to be an actual possession—was interrupted by the entry of the defendants or those under whom they claim, then the statute would not apply. But an entry to toll the bar of the statute must be a manifest, open, and notorious going on the land with a view to require possession and challenge the right of the occupant. If not done with that view, but a mere accidental entry on the premises with a view to a different object, such would not displace the occupant or remove the bar of the statute."

5. In charging as follows: "We are requested to say that the entry made by and proved by William Bell, if believed, would interrupt the statute. If made with a design to take or require the possession of the Caldwell tract, and to exercise the right under the deed, then it would have the effect to displace the possession of Caldwell. But if that entry was made without a knowledge of the fact that it was on the Caldwell tract, and with no design to take possession, or challenge the right of Caldwell, or to exercise their privilege under the deed, then it would not be such an entry as would take away the operation of the statute."

6. The court erred in the answer to defendant's first and second points, which points and answers are as follows:

1st. If the jury believe the testimony of William Bell, the entry made and proved by him would interrupt the statute.

*Answer.* If made with a design to take or require the possession of the Caldwell tract, and to exercise the right, under the deed, then it would have the effect to displace the possession of Caldwell; but if the entry was made without a knowledge of the fact that it was on the Caldwell tract, and with no design to take possession or challenge the right of Caldwell, or to exercise their privilege under the deed, then it would not be such an entry as would take away the statute.

2d. The evidence in the case does not establish such an adverse claim by Caldwell as will confer a title by the statute of limitations.

*Answer.* "This point is answered in the negative."

For plaintiff, in error, it was argued, 1. that although, ordinarily, the possession of the surface of the land is the possession of the whole, yet, when coal in the ground is conveyed to a stranger, his actual possession is gone and a constructive possession is in the purchaser, until legally ousted. Caldwell's possession consisted in the right which he retained, and was not inconsistent with that which was granted to Greer. The court,

therefore, erred in saying that residence on the surface gave Caldwell such a possession of the coal as would answer the requirement of the statute.

2. The court should have instructed the jury, that there was no evidence of adverse possession by plaintiff, instead of submitting that fact to them, for the evidence did not show actual, adverse, visible, notorious, hostile, and continued possession for twenty-one years, all which is necessary : 7 Casey 279.

3.. As to the entry proved by William Bell (to wit, a working of the coal-mine, from 1845 to 1848, under an agreement with Thompson Bell and William McClure, with the knowledge of Caldwell and without any denial of their right to work the mines), the court below erred in refusing to charge the jury, that it was sufficient to avoid the statute of limitations. The claim of right was distinct, and the effect of the proof was for the court, and not for the jury, to decide, when it was submitted : 10 Casey 74; 9 Watts 28; 1 Jones 212; 3 Harris 525; 2 Jones 128; 7 S. & R. 129.

*Cowan*, for defendant in error, contended that the Caldwells had always held adversely, openly, and notoriously against the right now set up by the alienees of Greer, under his deed, claiming land, coals, and all as his. He now resists the right of these claimants, averring that their right is barred by the statute of limitations, and that there was, therefore, no error in the instruction by the court on the trial.

The opinion of the court was delivered, January 7th 1861, by WOODWARD, J.—It is apparent, from that part of the charge of the learned judge which is recited in the first error assigned, that he made the title of Caldwell to the coal in dispute to depend altogether on the actual possession which Caldwell had maintained of the surface, and not at all upon his occasional entries to take coal, of which there was evidence. The judge's language was :—" This actual possession of the surface carries with it the actual possession downward perpendicularly through all the various strata. The actual possession, therefore, was in the plaintiff."

This proposition would be unquestionable, if there had not been a severance of the title to the mine-right from that of the surface by the deed of 27th May 1831, Caldwell to Greer. But it is not true that after such a severance, whether by reservation or grant, the possession of the surface is possession of the underlying mineral. That mines may form a distinct possession, and a different inheritance from the surface-land, has been long settled in England, as may be seen by reference to the cases cited in the two opinions heretofore delivered in this case, and

[Caldwell v. Copeland.]

reported in 7th Casey 476 and 482. See also Barnes v. Manson, 1 Maule & Sel. 84.

It is a common occurrence in mining districts there, not only that the ownership of the soil is vested in one person, and that of the mines in another, but there are frequently distinct ownerships of the minerals in the same land. Thus, one person may be entitled to the iron-ore, another to the limestone; a third to one seam or stratum of coal, and a fourth to a distinct stratum. Title to any of these minerals, quite distinct from the title to the surface, may be shown by documentary evidence,—or, in the absence of such evidence, or in opposition to it, title to them may be made out by proof of possession and acts of ownership under the statute of limitations. The acts of ownership, however, which constitute possession and confer title, must be distinct from such as are exercised over the surface: Tymnith v. Wynne, 2 Barn. & Ald. 554; Cullen v. Rich, Bull. N. P. 102. And see the same case under the name Rich v. Johnson, 2 Strange 1142. So entirely is a mineral-right, after severance, a claim to *land*, and therefore not an incorporeal hereditament, that title to it cannot be acquired by prescription. Prescription lies only for incorporeal rights, not for land. It may confer a right to work a particular mine, as it may confer a right of way across another's estate, or a right to fish in another's waters; but the title to the mine itself, like title to land, must be made out by documentary evidence, or under the statute of limitations: Wilkinson v. Proud, 11 M. & W. 33, and the cases therein cited.

It used to be said that if a grant of mines be made without livery of seisin, the grantee would take only a power to dig and work them: Touch. 96. But now, by statute 8 & 9 Vict. c. 106, all corporeal hereditaments are declared, as regards the conveyance of the immediate freehold, to lie in grant as well as in livery. And from Chatham v. Williamson, 4 East 476, and Wilkinson v. Proud, above cited, it would seem that the law was so even before the statute was passed.

The law of livery has never embarrassed our conveyancing in Pennsylvania. There is no more reason why mines in another's land, whether opened or unopened, may not be held by a deed duly acknowledged and recorded, than why land in its most ordinary signification may not be so held. In other words, mines are land, and subject to the same laws of possession and conveyance.

But whether Caldwell conveyed to Greer the coal-mines in his land, or only granted a license to enter and take coals, depended on the construction of the deed above referred to of 27th May 1831, and that was carefully considered and fully decided in the opinions reported in 7 Casey. It was then held that the deed was not a license but a conveyance of the fee of the mine—that it

[Caldwell *v.* Copeland.]

was a grant of land and not of an incorporeal hereditament. That ruling is not questioned in the present case, and it is decisive against the plaintiff's action so far as it is founded on a possession of the surface. For no length of possession of the surface merely could divest the title granted by that deed. Adverse possession of the mine by the owners of the surface, for the statory period, would avail as title, but the case was not ruled below on this ground, and therefore we do not consider whether the evidence made out such a possession in the plaintiff and those under whom he claims. On the ground assumed, that possession of the surface for more than twenty-one years was title to the mine, the court was clearly in error.

And in the second assignment we think there was error. If there was no possession in Caldwell of the coal-mine as a coal-mine, and independently of his possession of the surface, then there could be no question of *adverse* holding to submit to the jury. As to his *claim* of the coal, in opposition to his deed, this was not possession within the statute. At most it was only evidence of a prescriptive right, and corporeal hereditaments, I repeat, are not held by prescription.

If Bell's entry was not made "to exercise the privilege under the deed"—that is, if it were not in pursuance of the deed and whatever rights it conferred, the answer given to the defendant's first point was right. No entry would toll the statute that was not made or authorized by some person having rights under the deed. But if it were an entry under and in pursuance of the deed, it would toll the running of the statute in favour of the grantor. The language of the learned judge in answer to this point was not quite as clear as we could have wished, but as we understand it we see no error in it.

We say nothing about his reputed answer to the 2d point, because it is denied by the counsel for the plaintiff that such a point was propounded or such an answer given, and the record does not prove them.

The judgment is reversed, and a *venire facias de novo* is awarded.