# G. J. LILLIBRIDGE ET AL. v. LACKAWANNA COAL CO.

## APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 24, 1890.

Re-argued February 23, 1891—Decided October 5, 1891.

[To be reported.]

1. The surface of land and the minerals beneath it may be dissevered in title and become separate tenements. In case of such severance, the mineral becomes a separate corporeal hereditament, and its ownership is attended with all the attributes and incidents peculiar to the ownership of land.

2. An instrument by which the owners of land "granted, demised, leased, and to farm-let" all the merchantable coal under their land, with the exclusive right to mine and remove the same, habendum, "until the exhaustion thereof, under the terms of this indenture," effected a severance of title vesting in the "lessee" an estate in fee-simple in the coal.

3. Upon a bill filed by the grantors to restrain the grantee from transporting, through an open space 200 feet below the surface made by mining out part of the coal conveyed, other coal mined by the defendant from an adjoining tract, no actual injury to the plaintiffs being averred, a demurrer for want of equity was properly sustained.

4. As it did not appear from the instrument, or even by averment, that such use of the open space was contrary to the intention of the parties in executing the grant, the defendant, as the owner of the substratum of coal, owned also the chamber or space enclosing it, and had the legal right, while his ownership continued, to transport other coal through it.

5. There is no substantial difference between a title by exception out of a grant, and a title by direct grant of the same subject. Under an exception from a conveyance of land of all the coal therein, the dominion of the grantor over the coal is no greater, and his ownership is no more absolute, than if his title were acquired by purchase from one owning both coal and surface.

Argued before Paxson, C. J., Sterrett, Green, Clark and McCollum, JJ.; re-argued before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 89 July Term 1889, Sup. Ct.; court below, No. 4 October Term 1888, C. P. in Equity.

Statement of Facts.

On August 22, 1888, G. J. Lillibridge, and John N. Lillibridge and Lucilla, his wife, filed a bill in equity against the Lackawanna Coal Company, Limited, averring that by a written agreement, dated March 24, 1883, made a part of the bill, the plaintiffs, with Mrs. Almira Lillibridge, demised to the defendant all the merchantable coal underlying a tract of forty-five acres in Blakely borough, Lackawanna county, the lessors being then the owners in fee of said land and coal; that the plaintiffs had since become the sole owners of the land aforesaid, and of the rights appertaining to the lessors under said agreement; that under said lease the defendant had mined out coal from one of the underlying veins, to such an extent that an open way, of great breadth, about twelve feet in height, and about two hundred feet beneath the surface of the land, had been made through said vein, from the northerly to the southerly side of said tract; that, within two years prior to the filing of the bill, the defendant had become the lessee or owner of about three hundred and fifty acres of coal, adjoining the plaintiffs' land upon the northerly side thereof, and was mining the last mentioned coal and carrying it through, under and across the plaintiffs' land, by means of said open way, to its improvements for preparing the coal for market situated upon other property not belonging to the plaintiffs, thus unlawfully and wrongfully appropriating plaintiffs' property for a road to transport said other coal; praying that, for want of an adequate remedy at law and to avoid a multiplicity of suits, an injunction might be granted, restraining the defendant from transporting said other coal through plaintiffs' land by means of said underground way, and for general relief.

By the agreement of March 24, 1883, recited in the bill, the plaintiffs and Mrs. Almira Lillibridge, parties of the first part, " granted, demised, leased, and to mine-let, unto the " defendant, " its successors or assigns, all the merchantable coal, together with the sole and exclusive right to mine and remove ·the same, under the " tract of land described in the bill, " to have and to hold the coal in and under said land unto the said party of the second part, its successors or assigns, until the exhaustion thereof, under the terms of this indenture." The defendant, by the same instrument, covenanted to prosecute energetically the business of mining said coal, and to pay to the parties of the

first part certain specified royalties by the ton of mined coal, paying for at least fifteen hundred tons of coal each year, " until such time as the coal under said tract shall become so far exhausted that it is impossible to mine so large an amount in any one year," etc.   After stipulating, further, that the party of the second part (defendant) should pay all taxes and imposts upon the coal mined, but that all taxes upon the surface and unmined coal should be paid by the parties of the first part; that, upon failure of the party of the second part to comply with certain covenants contained in the agreement, the parties of the first part, upon written notice, might " declare this lease forfeited," and retake possession, etc.; that the parties of the first part should have the right to direct that a reasonable amount of coal be left in pillars, as support for the surface; and that the party of the second part should have the right to take, without payment therefor, such coal as might be necessary for the making of steam, for the work of mining, ventilation, etc., the amount so taken to be " proportioned with the other tracts of land from which coal is taken by means of" defendant's breaker and other improvements, the agreement provided as follows : " All and singular the grants, demises, leases and lettings, covenants and agreements hereinbefore contained, shall enure to the benefit of, and be binding upon each and every of the heirs, executors, administrators, survivors, successors and assigns, of each and every of the parties to this indenture, the same, to all intents and purposes as though they were mentioned and included in each and every of said grants, demises, leasings, lettings, covenants and agreements."

On October 25, 1888, the defendant filed a demurrer to the bill, averring as causes thereof, first, that the plaintiffs had not made or stated such a case as entitled them, in a court of equity, to any relief; and second, that for the grievances alleged in the bill there was a plain and adequate remedy at law.

After argument upon the demurrer, the court, GUNSTER, J., on March 25, 1889, filed an opinion, setting forth his conclusions of law in substance as follows: (*a*) That the indenture between Mrs. Almira Lillibridge and the plaintiffs, of the one part, and the defendant, of the other part, was, in effect, not a lease or a license, but a conveyance of the coal; citing: Smith v. Darby, L. R. 7 Q. B. 716; Caldwell v. Fulton, 31 Pa. 475;

Caldwell v. Copeland, 37 Pa. 427; Brown v. Corey, 43 Pa. 495; Whitaker v. Brown, 46 Pa. 197; Penna. Salt. Mfg. Co. v. Neel, 54 Pa. 9; Scranton v. Phillips, 94 Pa. 15; Sanderson v. Scranton City, 105 Pa. 469; Delaware etc. R. Co. v. Sanderson, 109 Pa. 583; (*b*) that by the sale and conveyance of the coal, the defendant acquired along with it the right to use the chamber or space enclosing it, for any purpose it might see fit, until the coal was exhausted; citing: Proud v. Bates, 34 L. J. Ch. 406; McSwinney on Mines, 69, 356, 360; Hamilton v. Graham, L. R. 2 Scotch & Div. App. Cas. 166; Eardly v. Granville, L. R. 3 Ch. Div. 826; Ramsey v. Blair, 1 App. Cas. 701; Whitaker v. Brown, 46 Pa. 199; Sheppard's Touchstone, 100; distinguishing Dand v. Kingscote, 6 M. & W. 174; Durham etc. Ry. Co. v. Walker, 2 Q. B. 940 (42 E. C. L. R.), and citing, as to the distinction between easement and copyhold cases, and cases of separate tenements divided from each other vertically: Lewis v. Branthwaite, 2 B. & Ad. 437 (22 E. C. L. R. 186); Keyre v. Powell, 2 El. & Bl. 132 (75 E. C. L. R. 132); Bowser v. Maclean, 2 DeG., F. & J., 415; and (*c*) that, there being no averment that the defendant was interfering with the subjacent or superjacent soil, the transportation of foreign coal through the way created in taking out coal under the indenture, was not an unlawful or wrongful appropriation of the property of the plaintiffs, but a legitimate use by the defendant of its own property.

A decree was then entered sustaining the demurrer and dismissing the bill at the costs of the plaintiffs; whereupon the plaintiffs took this appeal, assigning said decree for error.

*Mr. Garrick M. Harding* (with him *Mr. John S. Harding*), for the appellants:

1. The first ground of demurrer we understand to have been sustained by the court below. That the grant to the defendant amounted to a sale of all the merchantable coal underlying the land, cannot be disputed. But, in the light of the facts averred in the bill and admitted by the demurrer, did the court construe the grant in accordance with precedent and authority? "The great rule of interpretation, with respect to deeds and contracts, is to put such a construction upon them as will effectuate the intention of the parties, if such intention be con-

sistent with the principles of law:" Hollingsworth v. Fry, 4 Dall. 321; Stoever v. Stoever, 9 S. & R. 450; Freeland v. Burt, 1 Term R. 701.

2. One may own a chamber, even in a house, as his separate real estate: Freeland v. Burt, supra; Loring v. Bacon, 4 Mass. 575; Meeting House v. Lowell City, 1 Metc. 541; Cheeseborough v. Green, 10 Conn. 318 (26 Am. Dec. 396). Now, were not the plaintiffs the owners of the open space resulting from the mining out and removal of coal from their land? Can it be that they conveyed it away by the so-called lease? Undoubtedly, they charged upon it such service or easement as was necessary for the mining of the remaining coal: Ewing v. Mining Co., 110 Ill. 290; Marvin v. Mining Co., 55 N. Y. 538. But that was all. They did not charge upon it the additional service of transporting other coal which the defendant might subsequently buy.

3. It is conceded that when the coal under their land shall be exhausted, the contract will come to an end and this open space will revert to the plaintiffs. If they be regarded as reversioners, they certainly could maintain an action for the violation of any of their rights in connection with it, and the degree of damage is wholly immaterial: Ripka v. Sargeant, 7 W. & S. 9; Pastorius v. Fisher, 1 R. 27; Seneca R. Co. v. Railroad Co., 5 Hill 170. But, as the remedy at law would cause a multiplicity of suits and vexatious litigation, it is proper to resort to the remedy in equity: Miller v. Gorman, 38 Pa. 309. An easement will not justify the use of the land for purposes other than those for which it was granted: Kaler v. Bearman, 49 Me. 207; Noyes v. Hemphill, 58 N. H. 536; Valley Falls Co. v. Dolan, 1 R. I. 489; 2 Washburn on Real Prop., 280; Chestnut Hill Turnpike Co. v. Piper, 77 Pa. 432; Richardson v. Clements, 89 Pa. 503; Cowling v. Higginson, 4 M. & W. 245; Ballard v. Dyson, 1 Taunt. 279; Howell v. King, 1 Mod. 190; Davenport v. Lamson, 21 Pick. 72; Garritt v. Sharp, 3 A. & E. 325.

4. There is one Pennsylvania case, almost, if not quite parallel with the case at bar: McCloskey v. Miller, 72 Pa. 151. On examination of the English cases cited by the court below, of which there are really but two, as all the others are grounded on Proud v. Bates. 34 L. J. Ch. 406, and Hamilton v. Graham,

Opinion of the Court.

L. R. 2 Scotch & Div. App. Cas. 166, we find that those cases are entirely distinct in their features from the present case: (*a*) They arose out of exceptions in the respective grants, and as to the things excepted there was not even an intendment of such a thing as a passing of ownership; (*b*) at the very time of making the grants, the grantors were the owners of all the surrounding minerals, and the exception in each case was adjudged to be necessarily and "intentionally" applicable to the mines and minerals generally; and (*c*) the rule of interpretation which we have cited was not departed from in either of those cases.

*Mr. Henry A. Knapp* and *Mr. Everett Warren,* for the appellee:

The instrument or contract between the parties is in its legal effect a sale of the subjacent stratum of coal: Caldwell v. Fulton, 31 Pa. 475; Caldwell v. Copeland, 37 Pa. 427; Sanderson v. Scranton City, 105 Pa. 469; Delaware etc. R. Co. v. Sanderson, 109 Pa. 583. Owning that stratum, the defendant may put it to any use, so long as there is no breach of the plaintiffs' contract rights, and the maxim, sic utere tuo ut alienum non lædas, is not violated: Broom's Leg. Max., 264; Austin's Jurisprudence, § 515; Anderson's Law Dict., 741; McSwinney on Mines, 67, 68; Hamilton v. Graham, L. R. 2 Scotch & Div. App. Cas. 166; Bowser v. Maclean, 2 DeG., F. & J., 415; Hamilton v. Dunlop, L. R. 10 App. Cas. 813; Ballacorkish etc. Min. Co. v. Harrison, L. R. 5 Priv. C. App. Cas. 49; Eardley v. Granville, L. R. 3 Ch. Div. 826; Proud v. Bates, 34 L. J. Ch. 406; Horizontal Divisions of Land, 1 Am. L. Reg., N. S., 577; Armstrong v. Caldwell, 53 Pa. 284. Moreover, for the grievances alleged the plaintiffs have an adequate remedy at law. Equity will interfere to prevent a multiplicity of suits, but not when the plaintiffs' title is disputed: Pomeroy's Eq. Jur., § 252; Minnig's App., 82 Pa. 373; Leininger's App., 106 Pa. 398.

OPINION, MR. JUSTICE GREEN:

It is not at all questioned, but is expressly conceded by the learned counsel for the appellants, that the agreement between these parties is an absolute sale to the defendant of all the

merchantable coal underlying the tract of land in question, and that the surface of the land and the minerals beneath it may be dissevered in title and become separate tenements. This doctrine has been so frequently decided by this court, and in such varying circumstances, that a mere reference to some of the leading cases will be all that is necessary for the present occasion: Caldwell v. Fulton, 31 Pa. 475; Caldwell v. Copeland, 37 Pa. 427; Scranton v. Phillips, 94 Pa. 15; Sanderson v. Scranton City, 105 Pa. 469; Del. etc. R. Co. v. Sanderson, 109 Pa. 583.

In the opinions delivered in the foregoing and other cases, we have emphatically decided that the coal or other mineral beneath the surface is land, and is attended with all the attributes and incidents peculiar to the ownership of land. We have held the mineral to be a corporeal and not an incorporeal hereditament; that the surface may be held in fee by one person and the mineral also in fee by another person; that the mineral may be subject to taxation as land, and the surface to an independent taxation as land, when owned by a different person; that possession of the mineral may be recovered by ejectment, and title to it may be acquired by adverse possession under the statute of limitations, though not by prescription, because it is not an incorporeal right. In short, we have for nearly half a century judicially regarded the ownership of mineral, where it has been properly severed from the surface, as the ownership of land to all intents and purposes. Said STRONG, J., in Caldwell v. Fulton, supra, "Coal and minerals in place are land. It is no longer to be doubted that they are subject to conveyance as such. Nothing is more common in Pennsylvania than that the surface right should be in one man, and the mineral right in another. It is not denied, in such a case, that both are landowners, both holders of a corporeal hereditament." WOODWARD, J., in Caldwell v. Copeland, supra, said: "There is no more reason why mines in another's land, whether opened or unopened, may not be held by a deed duly acknowledged and recorded, than why land in its most ordinary signification may not be so held. In other words, mines are land, and subject to the same laws of possession and conveyance."

In the litigated causes, the contentions have been rather

Opinion of the Court.

upon the interpretation and legal effect of the instruments under which the questions have arisen, than upon the doctrine itself. No such contention arises here, as counsel have very candidly conceded what was indeed inevitable, that the instrument between the present parties came clearly within the adjudged cases, and created an estate in fee-simple in the defendant, in the coal underlying the plaintiffs' surface. It includes " all the merchantable coal" under the surface, " with the sole and exclusive right to mine and remove the same," and with this habendum: " To have and to hold the coal in and under said land unto the said party of the second part, its successors or assigns, until the exhaustion thereof, under the terms of this indenture."

It is not possible that there can be any question that this is an absolute grant in fee-simple of all the coal under the surface of the tract. But it is contended with great earnestness and ability by the learned counsel for the appellants, that nothing more than the coal passed to the defendant under the agreement, and as to the chamber or space left by the removal of the coal under the mining operations of the defendant, the plaintiffs were still owners in fee, or reversioners, with a right which could not be invaded by the defendant, except for the purpose of removing the coal that underlaid the surface. This brings us to consider the precise character of the present proceeding, and the particular question that arises under it.

The proceeding is a bill in equity to restrain the defendant from removing coal belonging to them on another tract adjoining this tract on the north, by moving the same through a tunnel or way made by the defendant through one of the underlying veins of coal across the tract to the other land of the defendant, two hundred feet below the surface, of considerable breadth and twelve feet in height. It is alleged in the bill that this way was produced by the mining operations of the defendant in accordance with the contract, and that the defendant, having acquired the adjoining property after the agreement with the plaintiffs was made, have been and are taking out coal from the adjoining tract through and over this tunnel or way, and this is claimed to be an illegal use of the plaintiffs' property which they asked to have restrained. The argument is that it was not within the intention of the parties

that such a right should be granted or exercised, and that, whether it was or not, the plaintiffs have such a property in the chamber or space left by the mining operations that it cannot be used without their permission.

There is nothing in the instrument or in the circumstances surrounding it, which can give any force to the argument from intention. We cannot know what was the intention of the parties except from the terms of their contract. The defendant demurred to the bill for want of equity. No testimony of any kind has been taken. The bill makes no averment of any intention of either of the parties, but simply sets out the contract and the acts of the defendant in executing its terms. Of course, there are no surrounding facts that we can consider. There are none in the bill except such as are subsequent to the contract, and these amount only to an allegation of the subsequently acquired interest of the defendant in the adjoining property, and the removal of coal therefrom through the way made by the removal of the coal under the tract.

The proposition that the plaintiffs have a fee in the chamber or space left by the removal of the coal, antagonistic to the right of the defendant to use it, is a novel one. No authority is cited to support it, and it seems quite incongruous with the admitted ownership and estate of the defendant in the coal displaced. Under all the decisions, the coal in place was absolutely owned in fee-simple by the defendant. In a state of nature, the coal necessarily occupied space. How could the defendant own the coal absolutely and in fee-simple, and not own the space it occupied? Or, how is it possible to conceive of such a thing as the ownership of the space independently of the coal? If the coal in place is a part of the very substance of the soil, more corporeal than the surface, as was said in Caldwell v. Fulton, how can the law regard the space which the substance occupies, as other than the substance itself? Of course, such an idea is incapable of practical application, except upon the theory that the coal is not a corporeal substance to be sold and delivered, but that only an incorporeal right to remove it passes to the grantee under a conveyance. And such is the real nature of the appellants' argument. It could not be otherwise. Certainly, if such were the nature of the defendant's right, the argument and the authorities cited in support of it would be

applicable and of controlling force ; but it is a sufficient reply to all of them to say that all the decisions are directly the other way, and that they all establish that a conveyance of the coal in fee carries everything with it, just as fully and completely as a conveyance of the soil above. We said in Caldwell v. Fulton, " It is a common thing, in the mineral districts of Pennsylvania, for the surface to belong to one owner, and the coal which it covers to another. Both the surface and the coal are held by deeds, executed and delivered and recorded in the same manner ; and there is no more reason for considering the coal an incorporeal hereditament, because it has not been opened, than there is for considering the soil such, because it has not been ploughed. Still less reason is there for calling it an incorporeal hereditament, if the deed happen to describe the grant as a right to enter, dig, and carry away all the coal, instead of describing the coal without the customary circumlocution. In all these cases, where the right, rather than the thing, is described, nobody is at a loss to know what is intended to pass. It is the thing that is bought and sold. And where that is a coal bed, it is an abuse of language, and an unnecessary application of legal distinctions, to call it an incorporeal hereditament." If, then, the coal in place is a pure corporeal hereditament, the title in fee-simple to which passes to a purchaser by apt conveyance, there would be no more propriety in claiming a title in the grantor to the space it occupies, than there would be in claiming a similar right in a vendor of the surface to the space developed by the vendee in digging the cellar and foundations of a house. We are altogether unwilling to adopt any such view of the rights of the parties in either of such cases.

By the necessity of the case the appellants argue that the defendant's right in the chamber or way is only an easement, and then cite authorities that an easement can only be exercised to the extent of the grant. But, as we have already seen, this is in direct hostility to all the authorities on that subject. If the subject be further considered upon principle, it will be found difficult to understand that any property right of the appellants is invaded by the action of the defendant. According to the averments of the bill, the tunnel or way is cut through a vein of coal, two hundred feet below the surface, and is twelve feet high and extends in the vein all the way from the

one side to the other of the tract.   In this way or chamber the
plaintiffs, as owners of the surface, have no right or title.   They
have no access to it, they cannot use it; they are in no manner
obstructed or injured by it.   Nor can we understand how they
are or can be injured in any other way.   It is of no avail to say
generally in the bill that they are injured.   The injury must
be stated specifically, so that a court may know what it is.
This is not done, and we know not what the injury complained
of is.   How, then, can we enjoin the defendant?   We are asked
to enjoin against the removal of coal from the adjoining tract,
but this is a matter with which the plaintiffs have no concern.
They do not pretend to have any title or interest in that coal.
They ask to enjoin removing that coal through the chamber or
way made by the defendant through its own property, to wit,
the coal sold to them by the plaintiffs.   Why or for what reason
should we do this?   The plaintiffs would gain nothing which
they do not now have, if we did.   No complaint is made in the
plaintiffs' bill of either the deprivation or injury of any right
growing out of the contract.   The plaintiffs cannot possibly use
any part of the space left by the removal of the coal, and hence
they are not obstructed in the slightest degree.   The right to
use that space is exclusively in the defendant, and that use is
not and cannot be questioned by the plaintiffs.   It is not al-
leged that the defendant has failed to perform any duty imposed
upon it by the contract.   We are bound to assume, therefore,
that all the coal which the defendant agreed to take out or pay
for each year has been taken out or paid for.   In no circum-
stances would the case be a proper one for an injunction.

But, upon the authorities, the case is entirely with the de-
fendant.   The question has arisen in several cases in the British
courts, and the right of the owner of the coal to use the tunnel
or way to carry other coal through it than that underlying the
land of the surface owner, has always been affirmed.   The sub-
ject is thus presented in McSwinney on Mines, page 67: " The
owner in fee-simple or tail, of lands containing mines or quar-
ries, has an absolute right to use them, and the chamber which
encloses them, and the space or shell which the working of the
minerals creates, and the sub-soil generally, in any manner
which he thinks proper.   And where the owner in fee-simple
of lands grants them, excepting the underlying mines, he has

Opinion of the Court.

with respect to those mines a similar right. And as, by excepting the mines, he ipso facto excepts the chamber which encloses them, he has a similar right with respect to that chamber and with respect to the space or shell which the working of the minerals creates. The containing chamber is not purely and solely a species of property which can only be made profitable by the removal of the enclosed minerals, with the incidental rights of using all proper means for obtaining them. It is a species of property which is as free as other property from restrictions as to its mode of use. The grantor may therefore use the space or shell created by his previous working of the enclosed minerals, as a thoroughfare for the carriage of minerals gotten out of his adjoining land. And if, instead of working the enclosed minerals and then utilizing the space or shell thereby created, he prefers to cut a passage through those minerals for the express purpose of using it, and to accordingly use it as a thoroughfare for the carriage of other minerals, he is entitled to do so."

In Hamilton v. Graham, L. R. 2 Scotch & Div. App. Cas. 166, there was an exception in a free charter in favor of the Duke of Hamilton, and his heirs, of all the coal and limestone within the lands granted. He was the owner of three estates, Clydesmill, Cambuslang, and Morristown; and one Graham had become the owner of the surface of Cambuslang. The Duke leased the coal in Clydesmill and a portion of the coal under Mr. Graham's surface in Cambuslang, and his lessees at once made use of a passage way through the coal underlying Mr. Graham's surface, for the conveyance of other coal and limestone mined from the estates of Clydesmill and Morristown, and this coal and limestone the Duke owned by virtue of the reservation or exception out of the grant of the surface. Mr. Graham brought an action to stop the further use of the passage, but it was held on appeal to the House of Lords that this was a rightful use of the passage. Lord WESTBURY, delivering his opinion, said: " You may approach it laterally from another estate, for the purpose of mining the minerals. You may use the strata which you have reserved to yourself, or rather declared to remain in yourself, in any manner consistent with ownership. You may traverse it from any adjoining land you have. You may create a road or tunnel through it; and

you may, through that road or tunnel, carry either the minerals or any other proceeds of an adjoining estate. You therefore have, for there is nothing to restrain you, the same universal right and unlimited power of enjoyment of the estate that remains in you, as you had antecedently to the grant of the dominium utile, the enjoyment of which that grant of the dominium utile in no respect impairs or affects." Lord COLONSAY, in the same case, said: "It is a great mistake to say that the Duke has no right to use these minerals except for the purpose of bringing them to the surface. He may use them in the way which is most beneficial to himself. . . . . There is no doubt that the Duke of Hamilton was not entitled to increase the burdens of the servitude on the surface, by bringing the minerals from the other property over the surface. The surface was the servient tenement and the minerals under that tenement were the dominant tenement in regard to that particular right of servitude. But the principle does not apply in regard to the right of property; and to say that he is carrying the minerals through the property of the pursuer is another mistake. He is carrying them through his own property, and not through the property of the pursuer at all. There is a want of keeping in view the distinction between the right of property and the right of servitude here, which seems to me to have led to an erroneous judgment in the case. I conceive that, so long as there is any of the mineral property which the Duke of Hamilton has, he is entitled to use any of that property in the mode which is most beneficial to himself." The Lord Chancellor also said, referring to his opinion in the case of Proud v. Bates, 34 L. J. Ch. 406, "As to the excepted mines, I held that the owner had an absolute right to do as he pleased with them, and that he therefore had a right to carry his coals through them."

In this last mentioned case of Proud v. Bates, a lease was made of the waste land of the manor, with an exception of the mines and quarries with full power to mine and work the same. A way available for the carriage of minerals lay exclusively within the excepted mines, and the lord claimed the right to carry through this way minerals worked on other property than that embraced in the lease. The court held that he had an absolute right to do what he pleased with the excepted mine,

Opinion of the Court.

and therefore he had a right to carry through them minerals from wherever gotten. Vice Chancellor WOOD, in delivering his opinion, said: "Now, whether the word 'mines' be used as it often is, in the sense of minerals, the thing dug out of the mine, or that which contains the minerals, that which contains cannot be less than the thing contained; and therefore, there is no doubt that the whole containing chamber which has the minerals is 'the mine;' and, so far as the mines are concerned, there can be no question that they are altogether out of the demise, and as to them the representatives of the lessee are of course entitled to use them for any purpose whatever and at any period. Lord CAMPBELL's decision, in the cause of Bowser v. Maclean, ubi supra, in this court, completely explains what the right view is. He says: 'With regard to copyholds, the copyholder has the whole right in him, but subject to the right of the lord to work the mines; and the lord cannot use an underground way for the purpose of passing through any portion of the copyhold premises. But, as to that which is excepted out of a demise by contract, of course the owner can use whatever he excepts in any way he thinks fit.'" In Eardley v. Granville, L. R. 3 Ch. Div. 826, JESSEL, M. R., says: "If a freeholder grants lands excepting mines, he severs his estate vertically; i. e., he grants out his estate in parallel horizontal layers, and the grantee only gets the parallel layer granted to him, and does not get any underlying mineral layer or stratum. That underlying stratum remains in the grantor." Referring to the case of Hamilton v. Graham, he said: "I decided that the same law applies to Scotland which applies to England. In a case like that, the word mines meant sub-soil containing the minerals, and not merely the minerals themselves."

The appellants reply to these cases by saying they were cases of exceptions out of grants, and the mines reserved or excepted were the property of the grantors and never were conveyed; hence they held everything not granted by their original title. But the distinction is without force. There is no substantial difference between a title by exception out of a grant, and a title by direct grant of the same subject. In a case of an exception, the grantor retains the whole title which he already holds; and in the case of a direct grant, the grantee holds the

Opinion of the Court.

whole title granted, and the ownership is as absolute in the one case as in the other. We have held that a grant of all the coal underneath a tract of land is an absolute conveyance in fee-simple of all the coal, and no greater title than that could be acquired by an exception to the same effect in a grant of the surface. The books make no distinction.

Thus, in 3 Washburn on Real Prop., 432, it is said: " As an exception is the taking of something out of the thing granted, which would otherwise pass by the deed, it may be said, in general terms, that it ought to be stated and described as fully and accurately as if the grantee were the grantor of the thing excepted, and the grantor were made the grantee by the exception." In Bowser v. Maclean, 2 DeG., F. & J., 415, the Lord Chancellor said: " I am inclined to think that a mistake has been committed in not distinguishing between a copyhold tenement, with minerals under it, and freehold leased land, with a reservation of the minerals, or freehold land where the surface belongs to one owner and the sub-soil containing minerals belongs to another, as separate tenements divided from each other vertically instead of laterally. If this had been such freehold land, the owner of the surface could not have complained of the making or of the excess in using a tramway through the sub-soil." In Whitaker v. Brown, 46 Pa. 197, we held that where a deed in fee of land was made, the grantor " saving and reserving, nevertheless, for his own use, the coal contained in the said piece or parcel of land, together with free ingress and egress by wagon-road to haul the coal therefrom as wanted," the saving clause operated as an exception of the coal, and therefore, that the entire and perpetual property therein remained in the grantor. The whole reasoning of the opinion puts the case upon exactly the same footing as if the words of the exception had been contained in a specific grant of the coal, and Fulton v. Caldwell, and kindred cases were cited as authorities for the ruling. In McSwinney on Mines, p. 68, the author says: " Similar principles apply where the owner grants it (the surface) by way of lease, excepting the mines, or where he grants the mines in fee-simple, and excepts the surface." In Bainbridge on Mines & Minerals, *34, the author says: " The severance of mines is usually effected by exceptions in deeds of assurance, which transfer the freehold

in the surface and reserve the mines. An exception is distinguished from a reservation by its being part of the thing granted, and in existence at the time of the grant; while the latter is a right of new creation arising out of the subject of the grant. They are different in legal effect, but in their creation ' there is no magic in words,' and if the meaning is clear, either of the above expressions will operate for the purpose designed. They are also construed exactly in the same way as actual grants. In either case, the law favors their construction by giving them all proper and necessary incidents."

There is no averment in the bill that all the coal in the vein has been taken out, or that the tunnel is opened on the bed-rock underneath the vein; on the contrary, it is alleged that the tunnel has been cut through the coal, by which we understand it is in the very body or substance of the coal which was bought by the defendant. It follows, hence, that the tunnel or way is exclusively within the defendant's own property, and is subject to such use as any owner may desire of property belonging to himself. Upon the whole case, we think the disposition of it made by the learned court below was correct.

Judgment affirmed.

Mr. Justice STERRETT, Mr. Justice McCOLLUM and Mr. Justice MITCHELL noted their dissent.