## Kormuth, Appellant, *v.* United States Steel Company.

Argued September 28, 1954. Before STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*W. Bertram Waychoff,* with him *Challen W. Waychoff, R. Wallace Maxwell* and *Waychoff & Waychoff,* for appellant.

*Charles E. Kenworthey,* with him *William Foster, Albert A. Sayers, Sayers, Hawkins & King* and *Reed, Smith, Shaw & McClay,* for U. S. Steel Company, appellee.

*Kenneth G. Jackson,* with him *C. M. Thorp, Jr., Earl F. Reed, Jr., Thorp, Reed & Armstrong, Walter*

*C. Montgomery, Montgomery & Montgomery, John F. Wiley* and *Marriner, Wiley & Marriner,* for Emerald Coal & Coke Company, appellee.

OPINION BY MR. JUSTICE ARNOLD, November 8, 1954:

Plaintiff appeals from the decree of the court below dismissing his bill in equity whereby he sought to enjoin an alleged continuing trespass by defendants.

The facts found by the chancellor, and fully supported by the evidence, are:

In 1902 the Luse heirs, owners in fee, conveyed to the Monongahela River Consolidated Coal and Coke Company all of the coal of the Pittsburgh seam in and underlying some 300 acres of their land "together with . . . *right of way into, upon and under said land at such points and in such manner as may be proper and necessary* for the purpose of . . . mining . . . and carrying away said coal; Hereby waiving surface support . . .; [and] together with the privilege of mining and removing through said described premises *other coal belonging to the [grantee], . . . its successors and assigns, or which may hereafter be acquired.*" (Italics supplied).

In 1911, Monongahela conveyed these premises, together with 25 contiguous tracts of the same seam, to the H. C. Frick Coke Company. In 1931 Frick conveyed to Emerald Coal Company five of the twenty-six tracts, some of which lie under the surface retained by the Luses at the time of transfer of coal to Monongahela. This conveyance further provided that it was "only for use by. . . . [Emerald] for the purpose of transporting to or adjacent to the Monongahela River coal from other properties now or hereafter owned or controlled by it" and that wheelage be paid by Emerald.

From 1931 to 1937, Emerald mined portions of this piece and constructed an underground haulageway, leaving about 80% of it still to be mined. In so doing, and because of excessive undulations making the mining of the coal dangerous and almost impossible, it was necessary to remove adjacent strata and thus deviate from the exact physical limits of the Pittsburgh seam.

In 1938, Emerald Coal Company conveyed a large area of the Pittsburgh seam, which included the portion beneath the Luse tract, to defendant, Emerald Coal and Coke Company. The defendant, United States Steel Company, became the successor to H. C. Frick Coke Company.

In 1945,—some 14 years after Emerald commenced mining and using the haulageway in the portion under question—plaintiff acquired about 95 acres of the surface of the Luse tract, which covered about one-half of the Luse coal conveyed by Frick to Emerald. At the time of so doing, he knew of Emerald's operations and of the existence of the haulageway, its purpose and use.

All of the coal under the plaintiff's surface has not been mined and there has not been an abandonment. Nor is there any claim that the operations of the defendants in any way interfere with the enjoyment of plaintiff's land. And as found by the court below: "The grades . . . [selected for the haulageway, to haul the coal there mined and as mined in adjoining areas] were chosen with the primary purposes in mind of conforming as nearly as possible with the actual space created by the removal of the coal within the corridor itself so as to require as little as possible excavation of bottom or taking down of top . . . the same was constructed in the usual and common practice in the mining industry."

The plaintiff agrees that Monongahela, Frick, and United States Steel would have the right to construct

and use the haulageway to remove coal from lands owned by them. But he contends: (1) Frick did not have the right to grant to the Emerald Coal Company a "right of way" through the Luse coal to transport coal never owned by Monongahela, Frick or United States Steel; (2) Emerald did not have any right to deviate from the physical limits of the Pittsburgh seam to haul coal other than that acquired by Monongahela, Frick, or United States Steel.

In the determination of the matter here involved, the following rules are basic and applicable: The language in the deed of conveyance should be construed most strongly against Luse and this plaintiff: *Irwin v. Hoffman*, 319 Pa. 8, 15, 179 A. 41. It should be so construed as to give effect to all its terms and provisions: *Robinson v. Stover*, 320 Pa. 308, 314, 182 A. 145; and to the intent of the parties: *Waldman v. Shoemaker*, 367 Pa. 587, 589, 80 A. 2d 776.

That the deed of conveyance of the coal to Monongahela contained two specific grants cannot be questioned. It conveyed the 300 acres of coal, with the "right of way into, upon and under said land *at such points and in such manner as may be proper and necessary*" for its mining and removal. And it granted a right of way to remove "through said described premises, *other coal* belonging to the [Monongahela] . . . *its successors or assigns, or which may hereafter be acquired.*" (Italics supplied)

Monongahela thus acquired a fee simple estate in all of the coal underlying the tract, and this was the subject of transfer by it: *Gallagher v. Hicks*, 216 Pa. 243, 65 A. 623. Particularly where, as here, the coal has not been exhausted or the estate abandoned, the space left by the removal of the coal belongs to the owner of the coal: *Lillibridge v. Lackawanna Coal Company*, 143 Pa. 293, 22 A. 1035. See also *Webber*

*v. Vogel,* 189 Pa. 156, 42 A. 4. ". . . until that estate is terminated by the exhaustion of the coal, or lost by abandonment, the vendee is entitled to the possession of the coal, *and also of the space made by its removal, and may use such space in transporting coal from other lands.*" (Italics supplied): *Westerman v. Pennsylvania Salt Manufacturing Company,* 260 Pa. 140, 144, 103 A. 539. See also *New York & Pittston Coal Company v. Hillside Coal & Iron Company,* 225 Pa. 211, 214, 74 A. 26. Thus, Monongahela and its transferees had a right to remove the coal from the 300 acres conveyed to it by the Luses, and to use the resulting areaways to remove coal from other lands owned by it, and such right continued to exist at least until the coal under that tract was exhausted or the operations thereunder abandoned. As heretofore noted, there still remain unmined about 80% of the portion underlying plaintiff's surface.

Plaintiff contends, however, that the instrument of conveyance from Frick to Emerald was a grant only of a right of way for the purpose of hauling coal from lands of Emerald never owned by Monongahela or Frick. But, despite the provision for payment of wheelage, it conveyed title to the portion described, with the right of mining and removing it. Further, the arrangement between Frick and Emerald does not determine the rights of plaintiff—he must depend on the rights passing to him from his predecessors in title. Under those he had no right to complain about the use of the space resulting from the mining and removal of the coal. "If, then, the coal in place is a pure corporeal hereditament, the title in fee-simple to which passes to a purchaser by apt conveyance, there would be no more propriety in claiming a title in the grantor to the space it occupies, than there would be in claiming a similar right in a vendor of the surface to the

space developed by the vendee in digging the cellar and foundations of a house . . . In this way or chamber the plaintiffs, as owners of the surface, have no right or title. They have no access to it, they cannot use it; they are in no manner obstructed or injured by it . . . We are asked to enjoin against the removal of coal from the adjoining tract . . . through the chamber or way made by the defendant through its own property, to wit, the coal sold to them by the plaintiffs . . . The plaintiffs would gain nothing which they do not now have, if we did . . . The plaintiffs cannot possibly use any part of the space left by the removal of the coal, and hence they are not obstructed in the slightest degree. The right to use that space is exclusively in the defendant, and that use is not and cannot be questioned by the plaintiffs": *Lillibridge v. Lackawanna Coal Company*, 143 Pa. 293, 302, 303, 22 A. 1035.

In addition, in the same deed of conveyance Monongahela was given a distinct and separate grant of right to remove "through the said described premises the coal belonging to [grantee] . . ., its successors and assigns, or which may hereafter be acquired." As stated by the court below: "The effect of this grant is to prevent any possibility of reverter to the surface owner as long as the sub-surface under the Luse tract is used to haul coal from other lands."

Plaintiff would have us interpret the grants from the Luses to Monongahela as restricting the right of transportation through those lands only to coal then owned or thereafter acquired by *it*. In other words that the grant of a portion of the coal under the tract to Emerald did not give Emerald the right to transport through the tract any of its coal which was never owned by Monongahela, Frick or United States Steel. But even though the coal might be exhausted, Monongahela was left with the rights to the space thereby

left, to be used for hauling. And the instrument conveyed this right to remove "other coal belonging to the [Monongahela], . . . *its successors and assigns, or which may hereafter be acquired.*" Contrary to the contention of plaintiff, this was not restricted to Monongahela holdings, but intended to include any coal owned by its transferees at such time as the right of way should be used. To hold otherwise would be to disregard the plain intendment of the words, "its successors and assigns," in the grant. See *Decker v. New York Central & Hudson River Railroad Company*, 57 Pa. Superior Ct. 432. This right was exclusive or independent of right to the Luse coal, and necessarily must be taken to give the right to remove the coal owned at any time by Monongahela and owned at any time by any of its transferees.

We can find no merit in plaintiff's contention that Emerald Coal Company violated any rights of plaintiff in going "outside of the physical limits of the Pittsburgh or River vein of coal, in constructing the haulageway through said premises for the purpose of hauling coal other than the coal owned or acquired by Monongahela, Frick or U. S. Steel." He states. "The plaintiff does not raise this question as affecting the right of the United States Steel Company, the H. C. Frick Coke Company or the Monongahela River Consolidated Coal and Coke Company to remove through the vein of coal all the coal of the block of 2702 acres owned by the Monongahela River Consolidated Coal and Coke Company." The court below found that: "12. The only manner in which the coal underlying the Luse Tract could economically be recovered was by being mined as a part of a larger tract . . . 37. . . . as the mining of the Corridor coal progressed . . . it became apparent that the main division of the Pittsburgh seam of coal undulated to an excessive degree . . .

41. To attempt to haul coal over the excessively undulating bottom . . . would have been impossible and would have been unsafe. 42. . . . it was proper and necessary, by reason of the excessive undulations . . ., to construct the said haulageway to a limited extent in the strata immediately over and under said seam or vein of coal, *not only for the purpose of digging, mining, draining and ventilating and carrying away said coal . . ., but also for the purpose of affording a haulage road of practical, uniform and safe grade . . .*" (Italics supplied). This deviation was a proper exercise of right and one that was necessarily contemplated by the very purposes of the grant. Cf. *Potter v. Rend,* 201 Pa. 318, 50 A. 821. See also *Commonwealth v. Fisher,* 364 Pa. 422, 72 A. 2d 568; *Commonwealth v. Fitzmartin,* 376 Pa. 390, 102 A. 2d 893. In its findings the court further declared that Emerald did no more than was "customary, proper and necessary" for the mining and removal of the coal in the tract and in the construction of a haulageway. The right to so do was specifically granted by the deed, is acknowledged by plaintiff to exist in Emerald's grantors, and as discussed heretofore, was assignable and was given to Emerald, which could use it for the purposes of removal of coal "which may hereafter be acquired" by the "successors and assigns" of Monongahela, Frick, or United States Steel.

The foregoing also disposes of plaintiff's contention that defendants' "use of plaintiff's property . . . [is] a taking of land without due course of law and contrary to Article I, Sec. 11 of the Constitution of Pennsylvania and without due process of law contrary to the Fourteenth Amendment of the Constitution of the United States." There is no violation of any right; defendants are using, in a proper and legal manner, exactly what was granted by plaintiff's predecessors

in title. The court also found as a fact that the seam of coal "lies at an average depth of greater than 353 feet beneath" the plaintiff's property. The haulageway is, on an average, 350 feet below plaintiff's surface, thus nullifying his contention that surface would be affected thereby.

One last question remains. Plaintiff filed his original complaint on December 11, 1950, and the preliminary objections of Emerald were sustained and the complaint dismissed as to it on November 19, 1951. On December 21, 1951, plaintiff amended his complaint pursuant to the order of the court granting leave to do so upon plaintiff's petition. Emerald, through error of counsel, sent its preliminary objections to local counsel in Greene County, on January 21, 1952. When presented to plaintiff's counsel for acceptance of service, on January 22, 1952, it was refused with plaintiff's counsel stating that he was going to file a motion for a decree pro confesso. This he did on the same day, and a decree was so entered. On the same day, but "a few moments" after entry of the decree, defendants filed their preliminary objections. Defendants filed petition to open, followed by a petition for leave to withdraw preliminary objections and to answer on the merits. The latter was granted February 23, 1952, and the decree opened February 25, 1952. Plaintiff contends that this was error.

Where a court makes absolute a rule to open judgment entered by default and to let defendant into a defense, we will reverse only where there has been a clear, manifest abuse of discretion: *Downes v. Hodin*, 377 Pa. 208, 104 A. 2d 495. Without further comment other than reference to the stated facts, we find no such abuse of discretion.

Decree affirmed; appellant to pay the costs.