**COOLSPRING STONE SUPPLY, INC., Appellant**

v.

**COUNTY OF FAYETTE, North Union Township and Laurel Highlands School District.**

Commonwealth Court of Pennsylvania.

Argued May 2, 2005.

Decided May 25, 2005.

Reargument En Banc Denied July 14, 2005.

James R. Walker, Pittsburgh, for appellant.

John S. Cupp, Jr., Uniontown, for appellee, County of Fayette.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Coolspring Stone Supply, Inc. (Coolspring) appeals from an order of the Court of Common Pleas of Fayette County (trial court) denying its motion for judgment on the pleadings and finding that real estate taxes imposed on its leasehold interests in subsurface limestone were appropriate.

Coolspring operates a limestone quarry in North Union Township on property that it leases. It conducts its mining pursuant to two mining permits issued to it by the Pennsylvania Department of Environmental Protection. Coolspring has conducted underground mining at the site for approximately 17 years, and its predecessors operated on the site since at least the 1940's.

For more than ten years following the time Coolspring began its mining operations, the County of Fayette (County) did not assess taxes on the limestone in place under the properties. However, in 1998, the County, North Union Township (Township) and Laurel Highlands School District (School District) began assessing real estate taxes on subsurface minerals, including oil, gas and limestone, which included Coolspring's leasehold interests in subsurface limestone. Coolspring appealed to the Board of Assessment Appeals of Fayette County (Board) challenging the validity of the tax.

Separately, a group of oil and gas producers through their Association, the Independent Oil and Gas Association (IOGA), filed a declaratory judgment action with the trial court challenging the validity of the tax as it applied to oil and gas. Coolspring's appeal was deferred pending the outcome of IOGA's lawsuit which the County acknowledged was an action on the same merits as Coolspring's. IOGA's case was ultimately decided by our Supreme Court in *Independent Oil & Gas Association v. Board of Assessment Appeals of Fayette County (IOGA)*, 572 Pa. 240, 814 A.2d 180 (2002), and following that decision, a hearing was held by the Board on Coolspring's assessment appeals with the only issue being, as agreed upon by the parties, whether the tax was valid. By letters dated December 31, 2003, the Board upheld the validity of the assessment.[1]

1. Regarding Coolspring's DEP Permit 3374SM58T, the County informed Coolspring by letter dated December 31, 2003, that its appeal had been reviewed and there had been no change in its valuation or tax status. Further, it was being assessed the following taxes for limestone for these tax years:

| Year | Assessment | |
|------|-----------|------|
| 1998 | $ 2,560 | Stone |
| 1999 | $ 2,560 | Stone |
| 2000 | $ 2,560 | Stone |
| 2001 | $ 7,310 | Stone |
| 2002 | $ 7,310 | Stone |
| 2003 | $776,000 | Stone |
| 2004 | $776,000 | Stone |

Regarding DEP Permit 26920401, the County informed Coolspring by letter dated December 31, 2003, that its appeal had been reviewed and there had been no change in its valuation or tax status. Further, it was being

■ Coolspring then filed a petition with the trial court appealing the Board's decision as well as a complaint for declaratory relief which were consolidated. The County, Township and School District, expressly and/or by failure to deny, admitted the material facts averred in the petition and complaint, and Coolspring filed a motion for judgment on the pleadings. By order dated December 20, 2004, the trial court denied the motion for judgment on the pleadings, finding that the Supreme Court's decision in *IOGA* did not apply to bar the imposition of real estate taxes on Coolspring's leasehold interests in subsurface limestone because that case dealt with imposition of *ad valorem* taxes on oil and gas interests. The trial court then noted that limestone was more like coal, which was taxable, because it was located in the ground until removed. The trial court stated, however, that limestone was not always a subsurface commodity because it could also be found on the surface of the ground and did not need to be mined at all, making it totally different from gas and oil that could never constitute surface commodities. On December 29, 2004, Coolspring filed a motion for certification of finality under Pa. R.A.P. 341(c),[2] which the trial court granted, and amended its December 20, 2004 order to certify it as final. This appeal by Coolspring followed.[3]

■ The only issue that Coolspring raises is that the Supreme Court's decision in *IOGA* makes it clear that subsurface limestone is not taxable as real estate. In that case, the Association owned leasehold interests in oil and gas in Fayette County, and in 1998, the Board assessed the Association's oil and gas interests for *ad valorem* taxes.[4] The Pennsylvania Supreme Court held that there was no statutory authority for the County to tax the Association's oil and gas interests as real estate, relying on Section 201 of the General County Assessment Law (Law),[5] Act of

---

assessed the following taxes for limestone for these tax years:

| Year | Assessment |
|------|------------|
| 1998 | $ 53,620 Stone |
| 1999 | $ 53,620 Stone |
| 2000 | $ 53,620 Stone |
| 2001 | $153,200 Stone |
| 2002 | $153,200 Stone |
| 2003 | $395,000 Stone |
| 2004 | $395,000 Stone |

2. Pa. R.A.P. 341(c) provides:

**Determination of Finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.

3. Our scope of review of the trial court's order denying Coolspring's motion for judgment on the pleadings is whether the trial court abused its discretion or committed an error of law. *Department of Public Welfare v. Lubrizol Corporation Employee Benefits Plan*, 737 A.2d 862, n. 4 (Pa.Cmwlth.1999).

4. IOGA filed a declaratory action and a motion for summary judgment with the trial court which dismissed the action stating that the court lacked subject matter jurisdiction because IOGA failed to exhaust its administrative remedies before the Board. On appeal to this Court, we reversed and remanded for further proceedings. On remand, the trial court denied IOGA's motion for summary judgment on the merits finding that the County was authorized to levy taxes on real estate, and oil and gas were considered real estate. We affirmed, and IOGA appealed to our Supreme Court which granted an allowance of appeal.

5. The Court also reviewed the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. §§ 601.101–601.605, and determined that Act did not address the authority to tax oil and gas rights.

May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–201, which provides:

> The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate:
>
> (a) **All real estate,** to wit: house, house trailers and mobile homes, buildings permanently attached to land or connected with water, gas, electric or sewage facilities, buildings, **lands,** lots of ground and ground rents, trailer parks and parking lots, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, all office type construction of whatever kind, that portion of a steel, lead, aluminum or like melting and continuous casting structures which enclose, provide shelter or protection from the elements, materials or products involved in the mill, mine, manufactory or industrial process, and all other real estate not exempt by law from taxation. (Emphasis added.)

The Court stated that that provision clearly did not include oil and gas rights despite the trial court's determination that oil and gas rights fell within the general meaning of the term "all real estate," and this Court's determination that oil and gas rights fell within the definition of the term "lands" because the general term "real estate" was limited by the terms further listed therein:

> Here, as the General Assembly saw fit to enumerate the types of "real estate" that are properly the subject of taxation, this Court is not at liberty to expand the items authorized for taxation beyond those subjects. . . . Again, referring to the doctrine of ejusdem generic, it is clear that all of the subjects of taxation mentioned in Section 201 constitute either land, as in the typical layperson's understanding (i.e., surface rights) or one of various types of physical improvements permanently affixed to such a "lot of ground." Oil and gas rights, by contrast, are quite unlike any of the other objects specifically identified in Section 201. Thus, the dissimilarity between the nature of oil and gas and those items which the General Assembly saw fit to enumerate as the proper subject of taxation militates against the conclusion that such terms are encompassed within the general terms "lands" listed therein.

*Id.* at 247, 814 A.2d at 184. The Court pointed out, though, that the General Assembly had separately recognized the taxing of coal interests under Section 415 of the General County Assessment Law, 72 5020–415 and Sections 612 and 616 of the Fourth to Eight Class County Assessment Law, 72 P.S. §§ 5453.612 and 5453.616, by providing for separate assessments of coal where a life tenant did not have a right to operate the coal and for the division of coal assessments bisected by county lines.

Relying on *IOGA,* Coolspring argues that its limestone cannot be taxed because it does not fall within the definition of "all real estate" or "lands" under Section 201 of the Law. Land is defined as "a solid part of the surface of the earth." Webster's Third New International Dictionary 1268 (1993). Limestone is part of the land, whether subsurface or on the surface of the ground, because, by definition, limestone is "a rock that is chiefly formed by accumulation of organic remains (as shells or coral), that consists mainly of calcium carbonate though sometimes also containing magnesium carbonate, and that is extensively used in building, agriculture, and metallurgy and yields lime when burned." Webster's Third New International Dictionary 1312 (1993). "Rock" is defined as

"consolidated or unconsolidated *solid mineral* matter composed of one or usually two or more minerals or partly of organic origin (as coal) that occurs naturally in large quantities or forms a considerable part of the earth's crust: a particular mass or kind of such material within the earth's surface." Webster's Third New International Dictionary 1965 (1993). (Emphasis added.) Therefore, contrary to Coolspring's argument that limestone is just like oil and gas and is unlike any of the specified items listed in Section 201, limestone is a mineral which is solid.

While the case law regarding limestone is sparse, the trial court aptly noted that our Supreme Court has previously held that subsurface minerals have been considered "lands" subject to taxation. In *Lillibridge v. Lackawanna Coal Company*, 143 Pa. 293, 22 A. 1035 (1891), our Supreme Court stated:

> "... we have emphatically decided that the coal or other mineral beneath the surface is land, and is attended with all the attributes and incidents peculiar to the ownership of land. We have held the mineral to be a corporeal, and not an incorporeal hereditament; that the surface may be held in fee by one person; that the mineral also in fee by another person; that the mineral may be subject to taxation as land, and the surface to an independent taxation as land, when owned by a different person; ... In short, we have for nearly half a century [as of 1891] judicially regarded the ownership of a mineral, where it has been properly severed from the surface, as the ownership of land, to all intents and purposes.... 'Coal and mineral in place are land....' ... In other words, mines are lands, and subject to the same laws of possession and conveyance." (Emphasis added.)

*Id.* at 299, 22 A. at 1036. *Lillibridge* relied on *Caldwell v. Fulton*, 31 Pa. 475, 72 Am. Dec. 760 (1858), in which our Supreme Court held that: "Coal *and minerals* in place are land." (Emphasis added.) Further, our Superior Court in *Burke v. Kerr*, 142 Pa.Super. 37, 15 A.2d 685, *affirmed*, 341 Pa. 304, 19 A.2d 382 (1941), held that the principles of law applicable to the mining of coal were applicable for the mining of limestone. Because it is clear that limestone is to be treated the same as coal and not to be treated the same as gas or oil, we agree with the trial court that limestone is taxable.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 25th day of May, 2005, the order of the Court of Common Pleas of Fayette County, dated January 5, 2005, is affirmed.